SHELBY COUNTY
CHANCERY COURT
APR 14 2009
JUN R. SETTLE, C & M
TIME:_____ BY:_____

## IN THE CHANCERY COURT OF SHELBY COUNTY, TENNESSEE
### FOR THE THIRTIETH JUDICIAL DISTRICT AT MEMPHIS

| | |
|---|---|
| LISA B. ROBERTS, as Trustee for the James A. Breazeale 2002 Insurance Trust, and JAMES A. BREAZEALE, | ) ) ) ) |
| Plaintiffs, | ) ) |
| vs. | ) No. CH-09-0786-1 ) |
| GENERAL AMERICAN LIFE INSURANCE COMPANY, | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT

Plaintiffs Lisa B. Roberts, as Trustee for the James A. Breazeale 2002 Insurance Trust, and James A. Breazeale, for their Complaint against General American Life Insurance Company, state as follows:

### I. The Parties

1.      Plaintiff Lisa B. Roberts (the "Trustee") is an individual residing in Shelby County, Tennessee, and is the Trustee of the James A. Breazeale 2002 Insurance Trust (the "Trust").

2.      Plaintiff James A. Breazeale is an individual residing in Shelby County, Tennessee.

3.      Defendant General American Life Insurance Company ("GenAmerican") is a Tennessee corporation that is authorized to conduct business in Shelby County, Tennessee. GenAmerican's registered agent for service of process is CT Corporation System, 800 S. Gay Street, Knoxville, TN 37929.

1



EXHIBIT
A

## II. Factual Allegations

4.      On June 19, 2002, the Trust submitted an application to GenAmerican for a $4.5 million Guaranteed Level Term Policy (renewable to age 95) on the life of Mr. Breazeale.  The Trust submitted the application through GenAmerican's independent agent Mr. Burr Hughes.

5.      In the application, the Trust requested $4.5 million in insurance coverage.  A true and accurate copy of this application is attached hereto as **Exhibit A.**

6.      The Trust later decided to reduce the amount of coverage it was requesting from $4.5 million to $3.5 million.

7.      During the discussions about reducing the amount of coverage, Mr. Breazeale asked Mr. Hughes about the annual premium cost for $3.5 million in coverage.  Mr. Hughes advised Mr. Breazeale that the estimated annual premium cost was $37,890, but that he believed he could secure for the Trust a reduced premium cost of $26,052.  In particular, Mr. Hughes advised that he was in final negotiations with Mr. Jim Riva, GenAmerican's general agent, in order to obtain a policy with "Table D" rating and not a policy with a "flat extra."  To bind the policy, however, Mr. Hughes recommended that the Trust pay the estimated annual premium and later be refunded the difference.

8.      GenAmerican issued Policy No. 3,702,002 (the "002 Policy").  This policy reflected insurance coverage of $3.5 million and an annual premium cost of $37,665 for the first ten years of the policy.  A true and accurate copy of the 002 Policy is attached hereto as **Exhibit B.**

9.      Due to inaccuracies in the 002 Policy, Ms. Roberts, on behalf of the Trust, rejected the 002 Policy in writing on October 2, 2002.

10.     As he had indicated, Mr. Hughes was subsequently able to secure a reduced premium rate for the Trust through negotiation with Mr. Riva.  Accordingly, on or about October 10, 2002, GenAmerican issued a check in the amount of $11,838.00 to refund the difference between the overpayment of the premium and the now agreed-upon reduced rate of $26,052.00. A true and accurate copy of this check is attached hereto as **Exhibit C**.

11.     GenAmerican internally created a specification sheet acknowledging the reduced premium.  A true and accurate copy of this specification sheet is attached hereto as **Exhibit D**.

12.     In November of 2002, GenAmerican issued a policy numbered 3,704,224 (the "224 Policy").  The 224 Policy was purportedly a reissue of the 002 Policy and mistakenly reflects coverage of $3.5 million and an annual premium of $37,665.00.  Neither Mr. Breazeale nor Ms. Roberts noticed the error.  A true and accurate copy of Policy 224 is attached hereto as **Exhibit E**.

13.     On November 13, 2002, Mr. Breazeale signed an Amendment of Application on the 224 Policy confirming the correction of the owner and the beneficiary.   A true and accurate copy of this Amendment is attached hereto as **Exhibit F**.

14.     In December of 2002, Mr. Hughes received what he understood was an inaccurate commission payment from GenAmerican for the sale of an insurance policy to the Trust.  He then discovered that GenAmerican had mistakenly issued a policy with a flat extra to the Trust instead of the policy with a Table D rating as agreed upon with Mr. Riva.  Mr. Hughes subsequently sent Mr. Riva a letter on or about December 19, 2002 requesting that Mr. Riva correct the policy to a Table D rating and not a policy with a flat extra.  A true and accurate copy of this letter is attached hereto as **Exhibit G**.

15.     For each of the next five (5) years, from 2003 to 2007, GenAmerican issued invoices for the annual premiums at a cost of $26,052.00.  Each invoice, however, reflected that the premium pertained to the 002 Policy and not the 224 Policy.  Each year, the Trust paid the requested premium of $26,052.00.  Attached hereto as **Exhibit H** are documents reflecting these invoices and the Trust's payment of the requested amount of premium for 2004, 2005, 2006 and 2007.[1]

16.     On or about September 28, 2007, GenAmerican sent a letter to Mr. Breazeale acknowledging its receipt of his premium payment of $26,052.00 for 2007 but stated that, due to a recent "policy change" his policy premium had increased to $37,665.00.  GenAmerican requested an additional $11,613.00 to keep the policy in effect.  A true and accurate copy of this letter is attached hereto as **Exhibit I**.

17.     During subsequent discussions with GenAmerican, GenAmerican informed Ms. Roberts and Mr. Breazeale that it had mistakenly billed the Trust for annual premium payments of $26,052.00 due to a clerical error.  The annual premium payments for the entire policy period, according to GenAmerican, should have been $37,665.00.

18.     The Trust, Mr. Breazeale, and Mr. Hughes made several efforts to correct GenAmerican's mistake as to the amount of the annual premium payment to no avail.

19.     The policy was 'frozen' at the direction of GenAmerican and no new premium invoices were sent to either Mr. Breazeale or Ms. Roberts.

20.     On or about April 15, 2008, Ms. Roberts received notice acknowledging that GenAmerican had purportedly made a clerical error in calculating the premium in 2002 but the notice went on to state that GenAmerican is "entitled to payment of the correct premium [of

---

[1] Plaintiffs cannot locate at this time similar documentary evidence of payment for 2003.

$37,665] for the remainder of the initial term period and each year thereafter." A true and accurate copy of this notice is attached hereto as **Exhibit J.**

21.     On or about October 1, 2008, in an attempt to prevent the policy from lapsing due to non-payment of premiums, Ms. Roberts sent a premium payment of $26,052.00 to GenAmerican for the 2008 period. A true and accurate copy of the payment and the accompanying letter from Ms. Roberts are attached hereto as **Exhibit K.**

22.     GenAmerican did not deposit this $26,052 check until March of 2009, at which time it applied $11,613.00 of this payment to what it contended was the overdue balance for 2007. On March 26, 2009, over five (5) months after its initial receipt of the premium payment, it returned the remainder of the payment, $14,439.00, allegedly, as an "insufficient premium" for the year 2009. A true and accurate copy of this payment is attached hereto as **Exhibit L.**

23.     On or about March 31, 2009, GenAmerican issued notice to Mr. Breazeale that it was contending that the 002 Policy had lapsed for non-payment of premiums. A true and accurate copy of this notice is attached hereto as **Exhibit M.**

**COUNT ONE**
**(Declaratory Judgment)**

24.     Plaintiffs repeat and re-allege the allegations set forth in the previous paragraphs as if set forth fully herein.

25.     Plaintiffs have paid each annual premium as it became due.

26.     Plaintiffs seek a declaration from this Court that the Plaintiffs are the owners of a Guaranteed Level Term Policy (renewable to age 95) from GenAmerican on the life of the Insured for $3.5 million with annual premium costs of $26,052.00 for the first ten (10) years of the policy, namely from 2002 to 2011.

## COUNT TWO
### (Breach of Contract)

27.    Plaintiffs repeat and re-allege the allegations set forth in the previous paragraphs as if set forth fully herein.

28.    In the alternative, GenAmerican has taken or may take the position that the 224 Policy or the 002 Policy was void *ab initio*.

29.    GenAmerican's position that the policy on Mr. Breazeale's life was void *ab initio* is a breach of the contract of insurance to provide life insurance.

30.    GenAmerican should disgorge any and all premium payments made on behalf of the Trust, plus prejudgment interest.

## COUNT THREE
### (Breach of Contract)

31.    Plaintiffs repeat and re-allege the allegations set forth in the previous paragraphs as if set forth fully herein.

32.    In the alternative, GenAmerican agreed to provide life insurance on Mr. Breazeale's life for ten (10) years, namely from 2002 to 2011, for an annual premium payment of $26,052.00.

33.    If this Court denies the declaratory relief sought by the Plaintiffs, the Trust will be forced to obtain replacement life insurance coverage for Mr. Breazeale.

34.    Due to the health problems experienced by Mr. Breazeale after he obtained the Policy in question in this matter, obtaining replacement life insurance coverage will be considerably more costly than the insurance he was able to obtain in 2002 from GenAmerican.

6

35.     Due to GenAmerican's breach of the life insurance contract, GenAmerican should be made to pay the difference between the policy premium of $26,052.00 and the premium now available on Mr. Breazeale's life.

36.     In any event, GenAmerican should be compelled to disgorge the $11,613.00 it has unlawfully retained as partial payment on the inflated premium charged for the year 2007.

## COUNT FOUR
### (Violation of the Tennessee Consumer Protection Act)

37.     Plaintiffs repeat and re-allege the allegations set forth in the previous paragraphs as if set forth fully herein.

38.     Defendant's unilateral increase of annual premium payment in the fifth year of a ten year life insurance policy, claiming clerical error, is an unfair and deceptive act in violation of the Tennessee Consumer Protection Act.

39.     Defendant's cancellation of the Plaintiff's life insurance policy for non-payment of premiums, when Defendant had received payment, is an unfair and deceptive act in violation of the Tennessee Consumer Protection Act.

WHEREFORE, Plaintiffs request the following relief:

(a)     That proper process issue to the Defendant requiring a response to this Complaint within the time allowed by law;

(b)     That this Court declare that Plaintiffs are the owners of a Guaranteed Level Term Policy (renewable to age 95) on the life of the Insured for $3.5 million with annual premium costs of $26,052.00 for the first ten (10) years of the policy, namely from 2002 to 2011;

(c)     In the alternative, that this Court find that Defendant has breached the contract for life insurance and should be required to disgorge any and all premium payments made by the Plaintiffs;

7

(d)     In the alternative, that this Court find that Defendant has breached the contract for life insurance and is required to pay any difference between the policy premium of $26,052.00 and the premium now available to Mr. Breazeale;

(e)     Other compensatory damages, general and special, to be determined at trial in this matter;

(f)     Treble damages as allowed by the Tennessee Consumer Protection Act;

(g)     For attorneys' fees and pre- and post-judgment relief;

(h)     That all costs be taxed to the Defendant; and

(i)     That the Plaintiffs be awarded all other and further relief to which they are entitled.

Respectfully submitted,

BURCH, PORTER & JOHNSON, PLLC

Taylor A. Cates (BPR #20006)
Leah Lloyd Hillis (BPR #24573)
130 North Court Avenue
Memphis, Tennessee 38103
(901) 524-5000

Attorneys for Plaintiffs
Lisa B. Roberts, Trustee and
James B. Breazeale

8

Application for Life Insurance
## General American
Life Insurance Company
St. Louis, Missouri

### 1. Proposed Insured

| Name (Last, First, Middle) | | Gender |
|---|---|---|
| Breazeale, James A. | | ☒ Male  ☐ Female |

| Social Security # | Date of Birth (MM/DD/YY) | Age (Nearest Birthday) | Birthplace |
|---|---|---|---|
| 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 | 09/28/42 | 60 | TN |

| Home Address (Street, City, State, Zip) | Email Address | Home Phone |
|---|---|---|
| 1863 Cordova Road  Germantown, TN 38138 | | ( 901 ) 754-5511 |

| Name and Address of Employer | Years Employed | Work Phone |
|---|---|---|
| Valley Products Co.  384 E. Brooks Road  Memphis, TN 38109 | | ( 901/396-9646 |

| Occupation | Annual Earned Income From Occupation | Net Worth |
|---|---|---|
| CHAIRMAN OF BOARD | $ 500,000 + | $ 6,000,000 |

### 2. Beneficiary — Provide Full Name & Relationship of each to Proposed Insured

| Primary | Contingent |
|---|---|
| Valley Products Co  384 E. Brooks Rd  Memphis TN 38109 | |

### 3. Owner

☐ Proposed Insured (Do not designate a Contingent Owner.)
☒ Other (Provide Full Name, Address, Phone Numbers, Email Address, Date of Birth & Relationship of each to Proposed Insured)

| Original | Contingent |
|---|---|
| Valley Products Co  384 E. Brooks Rd  Memphis, TN 38109 | |

Social Security or Tax # of Original Owner (Required By Law)

### 4. Premium Payor

☐ Proposed Insured   ☒ Owner   ☐ Employer   ☐ Other: (Provide Full Name and Billing Address.)

1067741B
(4/2001)


EXHIBIT
A

0919021178033

## Coverage Applied For (Include signed and dated illustration.)

| Special Issue Date | | Base Face Amount | $ 4,500,000 |
|---|---|---|---|

**Plan** Level Term 10 yr

**Contract Type (UL and VUL): Option:** ☐ Level (A)   ☐ Increasing (B)   ☐ Cash Value Accum Test (C)

**Benefits and Riders**

| Traditional | UL | VUL |
|---|---|---|
| ☐ Waiver of Premium | ☐ Waiver of Monthly Deduction | ☐ Waiver of Monthly Deduction |
| ☐ Accelerated Benefits (Complete Disclosure.) | ☐ Waiver of Specified Premium $_____ (Monthly Premium) | ☐ Waiver of Specified Premium $_____ (Monthly Premium) |
| ☐ Decreasing Specified Term II $_____ | ☐ Accelerated Benefits (Complete Disclosure.) | ☐ Guaranteed Survivor Purchase Option Plus $_____ on _____ |
| ☐ Level Specified Term II $_____ | ☐ Anniversary Partial Withdrawal | $_____ on _____ (Complete App. for each life.) |
| ☐ Premium Additions Rider (Face Amt.) $_____ | ☐ Guaranteed Survivor Purchase Option Plus $_____ on _____ | ☐ Anniversary Partial Withdrawal |
| ☐ Values Plus One Units #_____ | $_____ on _____ (Complete App. for each life.) | ☐ Accelerated Benefits (Complete Disclosure.) |
| ☐ Automatic Purchase Option $_____ Yr._____ | ☐ Supplemental Coverage Term Rider/ Joint Supplemental Coverage Term Rider $_____ | ☐ Adjustable Benefit Term Rider |
| ☐ Guaranteed Survivor Purchase Option $_____ on _____ | ☐ Lifetime Coverage Rider | ☐ Estate Preservation Term Rider $_____ |
| $_____ on _____ (Complete App. for each life.) | ☐ Secondary Guarantee Rider | ☐ Supplemental Coverage Term Rider/ Joint Supplemental Coverage Term Rider $_____ |
| ☐ Other _____ $ _____ | ☐ Other _____ $ _____ | ☐ Lifetime Coverage Rider |
| ☐ Other _____ $ _____ | ☐ Other _____ $ _____ | ☐ Secondary Guarantee Rider |
| ☐ Other _____ $ _____ | ☐ Other _____ $ _____ | ☐ Other _____ $ _____ |
| | | ☐ Other _____ $ _____ |
| | | ☐ Other _____ $ _____ |
| | | Complete #7 for VUL Suitability and separate VUL Supplement to elect funds. |

## Premiums and Dividends

**Billing**

☐ Pre-Authorized Check Monthly

☑ Direct   ☐ Combined Direct (Traditional)

☐ List   ☐ Single Premium (UL and VUL)

**Add to Existing Bill #** _____

**Dividend Option (if eligible)**

☐ Pd. Up Addns. (Trad.)   ☐ Cash

☑ Reduce Prem. (Trad.)   ☐ Accum. (Trad.)

☐ Inc. Cash Value (UL and VUL)

**Mode**

☑ Annual   ☐ Semi-Annual

☐ Quarterly   ☐ Monthly (List or PAC only.)

Note: Paying your insurance premiums more often than annually (more often than once a year) will cost more than paying them once a year. (Not applicable for UL/VUL plans.)

**Premium Amt. (UL and VUL)** $ 24,240.00

**Automatic Premium Payment**

(Traditional)

☐ Div. Accum.   ☐ Loan

☐ Both   ☐ Neither

1067741B
(4/2001)

EE0611170933
091001117933

## 7. VUL Suitability

|  | Yes | No |
|---|---|---|
| Have you received a Prospectus/Memorandum of Understanding for the policy applied for? | ☐ | ☐ |

Date of Prospectus/Memorandum [＿＿＿＿＿＿] Date of any supplement [＿＿＿＿＿＿]

Is a current Customer Information Statement for this owner on file with the selling broker-dealer?
(If "No", one must be submitted with this application.)  ☐  ☐

Do you understand that:
1. The death benefit and cash surrender value will increase or decrease depending on investment experience?  ☐  ☐
2. There is no guaranteed minimum death benefit or cash surrender value?  ☐  ☐

Do you believe that the policy applied for meets your insurance needs and your anticipated financial objectives?  ☐  ☐

☐ I request a copy of the Statement of Additional Information for the following Investment Company(ies):

## 8. ☐ Additional   ☐ Alternate   Insurance and/or illustration for:

Provide details including plan, amount and riders.  If Beneficiary and Owner other than original, indicate below.

## 9. Other Insurance

a. Total Life Insurance now in force on Proposed Insured.  If "None", check  ☐

| Company and Policy # | Year of Issue | Personal Ins. Amt. | Business Ins. Amt. | Accidental Death Amt. | Waiver of Prem. Yes | No |
|---|---|---|---|---|---|---|
| CNa  01507765 |  | 75,000 |  |  |  |  |
| Trans american  93007241 | 1984 | 252,761 |  |  |  |  |
| 93023952 | 1984 | 505,746 |  |  |  |  |

|  | Yes | No |
|---|---|---|
| If additional space is needed, provide information in "Details" below. |  |  |
| b. Are you currently applying for life insurance with any other company? (If "Yes", provide information in "Details" below.) 4,500,000 Emp Gan only thes are will | ☒ | ☐ |
| c. Will the insurance being applied for replace any of the above or any in force annuities? to push ane | ☐ | ☒ |
| d. Will the insurance being applied for receive any values (to pay premiums or additional payments) from another policy/contract? | ☐ | ☒ |

If either "c" or "d" is answered "Yes", circle affected coverage above or indicate in "Details" below.
Policy/contract number MUST be provided.  (Complete and submit required replacement forms.)

## 10. General Information

Have you: (Provide explanation of "Yes" answers in "Details" below.)

|  | Yes | No |
|---|---|---|
| a. Ever been declined, postponed, rated or offered a policy different than that applied for? | ☐ | ☒ |
| b. Any intention to travel or reside outside the United States? | ☐ | ☒ |
| c. Been a pilot or student pilot during the past 3 years or have any intention of becoming a pilot or student pilot in any type of aircraft? (If "Yes", complete Aviation Supplement.) | ☐ | ☒ |
| d. Participated in, or do you contemplate participating in:  aeronautics, competitive racing, underwater or sky diving, mountain climbing, or any other similar avocation? (If "Yes", complete Avocation Supplement.) | ☐ | ☒ |
| e. Ever had a traffic citation for driving while intoxicated or driving under the influence of intoxicants or drugs? | ☐ | ☒ |
| f. Within the past three years, had any moving vehicle violation? | ☐ | ☒ |

Provide Driver's License #  [ 354 39200 ]   State [ TN ]

106774IB
(4/2001)

0910021170833

**11. Details to "Yes" Answers Above/Additional Information**

**12. Home Office Endorsements Only**

**Declarations**

I agree that:
- The statements and answers in this application and any amendments to it, in any supplements, or made to the medical examiner are true and complete to the best of my knowledge and belief and will be the basis of any insurance issued and will be part of any policy issued.
- Knowledge of the agent or medical examiner will not be imputed to the Company unless stated in this application or any amendments to it, or in any supplements or medical reports received in the Home Office. No printed provision of this application will be modified or waived except by an endorsement signed by an officer at the Home Office. No agent or medical examiner has the authority to make or alter any contract for the Company.
- My acceptance of any insurance policy means I agree to any changes shown in #12, where state law permits Home Office endorsements.
- If a premium payment is given in exchange for a Temporary Insurance Agreement (TIA), the Company will be liable only as set forth in that Agreement.
- If a premium payment is not given, then insurance will take effect when a policy is approved by the Company for issue as applied for, the first full premium is paid and the health and insurability of any person proposed for insurance have not changed since the date of this app.
- If a policy is issued other than as applied for, insurance will take effect under the policy only when a policy issued by the Company is delivered and accepted by me, the first full premium is paid, and the health and insurability of any person proposed for insurance have not changed since the date of this application.
- It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

The Applicant and agent certify that the Applicant has read, or had read to him or her the completed application and that he or she realizes that any false statement or misrepresentation therein may result in loss of coverage under the policy.

**This contract may be subject to taxation as described in the Internal Revenue Code.**

**CERTIFICATION: Under penalties of perjury, I certify that:**
1. The number shown on this form is my correct Taxpayer Identification Number (or, if no number is shown, I am waiting for a number to be issued to me); and
2. I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding.

**\*\*PLEASE NOTE: You must cross out and initial #(2) above if you have been notified by the IRS that you are currently subject to backup withholding because of under-reporting interest or dividends on your tax return.\*\***
The IRS does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Date (MM/DD/YY) 6/19/02          Signed At (City, State) Memphis, TN

Signature of Proposed Insured - Parent or Guardian JWALS
if Proposed Insured under age 18

Signature, Name and Address of Applicant/ Owner if other than Proposed JWALS
Insured (If Owner is a Corporation, Partnership or Trust, an authorized officer, partner or trustee must sign and state title.)

I certify that I have truly and accurately recorded on all parts of this application the information supplied by the Applicant, the financial need of the Proposed Insured and Owner, the purpose of this sale has been discussed with the Owner, and I believe this application to be a suitable recommendation.

1. ____ To the best of my knowledge, this is a replacement.       X To the best of my knowledge, this is not a replacement.
(Complete and submit required replacement forms.)

2. ____ For VUL: Did you deliver the current Prospectus/Memorandum of Understanding and were all of the written sales materials used printed by General American Life Insurance Company?  ☐ Yes  ☐ No

(Signature of Licensed Agent)

1067741B
(4/2001)

0910621117833

## NOTICE OF INFORMATION PRACTICES/CONSUMER PRIVACY NOTICE

Thank you for applying for insurance with General American Life Insurance Company. Some personal information ("Information") about you and any other person to be insured ("Proposed Insured") was furnished by you in the application. We may call you to confirm or add to this Information. The questions asked during the phone interview will be detailed, so you may wish to have records about your income and health history at hand. We may also obtain Information from other sources as described below.

**Why We Collect and How We Use Information:** We collect and use Information for business purposes with respect to our business relationship with you. These business purposes include evaluating a request for an annuity or for insurance or claims offered by us, evaluating claims, administering our products or services, and processing transactions requested by you. We may also use Information to offer you other products or services we provide.

**How We Collect Information:** We get most Information directly from you. The Information that you give us when applying for our products or services may provide all the Information we need to process your application. If we need to verify or need additional Information, we may obtain it from third parties such as adult family members, employers, and others. Information collected may relate to your finances, employment, health, avocations or other personal characteristics, as well as to transactions with us or with others, including our affiliates. However, to see if you qualify for the insurance, we may also obtain Information about you and any Proposed Insured from third parties in accordance with the Authorization signed by you and any Proposed Insured in connection with your application.

**How We Protect Information:** We treat all Information in a confidential manner. Our employees are required to protect the confidentiality of information. Employees may access Information only when there is an appropriate reason to do so, such as to administer or offer our products or services. We also maintain physical, electronic and procedural safeguards to protect Information. Our employees are required to comply with our established policies.

**Information Disclosure:** We may disclose any Information when we believe it necessary for the conduct of our business, or where disclosure is required by law. For example, Information may be disclosed to others, including independent agents or brokers who sell our products and services, to enable them to provide business services for us, such as helping us to evaluate requests for insurance or benefits, to perform general administrative activities such as maintaining existing accounts, or to otherwise assist us in servicing or processing an insurance product or service requested or authorized by you. Information may be disclosed for audit or research purposes, or to law enforcement and regulatory agencies, for example, to help us prevent fraud. Information may be disclosed to affiliates as well as to unaffiliated companies, such as companies that process data for us, companies that provide general administrative services for us, other insurers, and consumer reporting agencies. Our affiliates include financial services companies such as life and property and casualty insurers, securities firms, broker dealers and financial advisors and may also include companies that are not financial services companies. To the extent permitted by law, we may also disclose Information to other insurance companies to whom you apply for life or health insurance or to whom a claim for benefits is submitted. We may make other disclosures of Information as permitted by applicable law.

Information may also be shared with our affiliates so that they may offer you products or services offered by them. We may also provide Information: (i) to nonaffiliated companies, such as marketing companies, independent agents and brokers, to assist us in offering our products and services to you, and (ii) to unaffiliated financial services companies with which we have a joint marketing agreement, such as, an agreement with another insurer to enable us to offer you that insurer's products. We do not make any other disclosures of Information to other companies who may want to sell their products or services to you. For example, we will not sell your name to a catalog company. We may disclose any Information, other than a consumer report or health information, for the purposes described in this paragraph.

**Access to and Correction of Information:** Generally, upon your written request, we will make Information we have about you available for your review. Medical Information will generally be disclosed through the licensed physician you choose or as otherwise required by law. Information collected in connection with, or in anticipation of, any claim or legal proceeding will not be made available. If you notify us that the Information is incorrect, we will review it. If we agree, we will correct our records. If we do not agree, you may submit a short statement of dispute, which we will include in any future disclosure of Information.

**Consumer Reports:** It is common for an insurance company to ask a consumer reporting agency to confirm and add to the Information given in an application. Such agencies are independent and impartial. Consumer reports will contain Information about your character, general reputation, personal characteristics, mode of living, and health. The Information we get will be used only for business purposes related to the insurance you have applied for. The Information may be kept by the agency and later given to others as permitted by the Federal Fair Credit Reporting Act and your state's Fair Credit Reporting Act, if any.

We may also request an investigative consumer report from a consumer reporting agency. The Information may be obtained through interviews with you, your neighbors, friends, and others who know you. You may ask to be interviewed in connection with any such investigative report we request and, upon your request we will advise you whether or not such a report was done, and the nature and scope of the investigation. You have the right to request and receive a copy of such investigative report. We will provide you the name and address of the consumer reporting agency so that you may request a copy of the report. Under the provisions of the Fair Credit Reporting Act, you may question the accuracy and seek correction of the Information in such report.

**Medical Information Bureau (MIB, Inc.) Notice:**

We or our reinsurers may make a brief report to the MIB, Inc. when you apply or submit a claim for life insurance. MIB, Inc. is a nonprofit organization of life insurance companies. It operates an information exchange on behalf of its members. Upon request, MIB, Inc. will provide a member company Information when: (1) you apply for insurance or file a claim for benefits; and (2) that company has a valid signed authorization from you and any Proposed Insured . Reports provided by the MIB, Inc. include certain medical and non-medical information that may affect the insurability of any person for whom coverage is sought.

We or our reinsurers may also release Information in our files to other life insurance companies to whom you apply for life or health insurance or to whom a claim for benefits is submitted.

MIB, Inc. will give you Information about you from its files on receipt of a written request from you. Under the provisions of the Fair Credit Reporting Act, you may question the accuracy of Information in the file and seek a correction by writing to:

MIB, Inc., PO Box 105, Essex Station, Boston, Massachusetts 02112.

**Additional Information:**

You may have additional rights under applicable laws. If you want to know more about our information practices and your rights, further information can be obtained from General American Life Insurance Company, Individual Operations, New Business Administration, 13045 Tesson Ferry Road, St. Louis, Missouri 63128.

**This Notice is required by Law and must be left with the Proposed Insured.**

9452NOT/CPN
(4/2001)

091602117833

# Authorization

For underwriting and claim settlement purposes, I authorize:

- any physician, medical practitioner, hospital, clinic, other medical or medically related facility, insurance company, consumer reporting agency, employer, business associate, financial institution, or government agency to release to General American Life Insurance Company ("General American"), its subsidiaries, its reinsurers or its legal representatives any information they may have relative to diagnosis, treatment and prognosis of any physical or mental condition including drug and/or alcohol abuse and/or any other information about me.

- the Medical Information Bureau, Inc. ("MIB, Inc.") to release to General American or its reinsurers any information it may have about me, including information relative to diagnosis, treatment and prognosis of any physical or mental condition, including drug and/or alcohol abuse.

I understand that any information obtained pursuant to this Authorization:

- will be used to determine eligibility for insurance and claim settlement purposes.

- if obtained from the MIB, Inc. may be disclosed to other life insurance companies.

- if obtained from any source, other than MIB, Inc. may be disclosed to MIB, Inc., other persons or organizations, including General American's affiliates, performing business or legal services for General American or where required or permitted by law.

- if subject to federal Department of Health and Human Services regulations setting forth standards for the use, maintenance and disclosure of certain health related information, once disclosed to General American, may no longer be covered by those federal regulations.

I further understand that:

- if an investigative consumer report is ordered in connection with my application, I may request that I be interviewed in connection with the preparation of the report and, upon request, I will be provided with a copy of the report.

- a photographic copy of this Authorization will be as valid as the original.

- I may request a copy of this Authorization.

- this Authorization will be valid for 30 months from the date shown below.  I may revoke my consent at any time by writing to General American and advising it that I have revoked this Authorization. Any action taken before General American has received my revocation will be valid.

I acknowledge receipt of and have reviewed General American's Notice of Information Practices/Consumer Privacy Notice.

| | |
|---|---|
| **6/19/02** | James A. Breazeale |
| Date | Print Name of Proposed Insured |

| | |
|---|---|
| | , a president |
| Signature of Proposed Insured – Parent or Guardian if Proposed Insured under age 18 | Signature, Name and Address of Applicant/Owner if other than Proposed Insured.  (If Owner is a Corporation, Partnership, or Trust, an authorized officer, partner, or trustee must sign and state title.) |

## General American

**LIFE INSURANCE COMPANY**
**ST. LOUIS, MISSOURI 63166**

9451AUTH
(4/2001)

**General American**
Life Insurance Company
St. Louis, Missouri

**Medical Declarations - Completed by Examiner**

1. Proposed Insured's Name (Last, First, Middle)          Date of Birth (MM/DD/YY)

   *James  A.  Breazeale*                                 9-25-42

2. a. Who is the doctor who can give us the most complete and up to date information concerning your present health?   If "None", check ☐

   Name and Address (Street, City, State, Zip)          Phone

   *Dr. William Weiss*                                   (901)
   *6931 Walnut Grove Rd*                                763-1695
   *Memphis, Tn 38120*

   b. When was this doctor last consulted?  *7-2001*   Why?  *physical - wnl*

   c. What treatment was given or medication prescribed?  If "None", check ☐

   *refill on current meds.*

3. Height   Weight   Any weight loss in the past year?  ☐ Yes  ☒ No

   *5'10*  *194*   If "Yes", reason

4. a. Do you use tobacco or nicotine products? ☐ Current  ☒ Past-date last used  *5-1-1982*  ☐ Never

   b. Type   ☒ Cigarettes   ☐ Pipe/Cigar   ☐ Chew   ☐ Patch/Gum

   Amount/Frequency  *½ ppd*

5. Within the last ten years have you had, been treated for, or diagnosed as having:

   | | Yes | No |
   |---|---|---|
   | a. High blood pressure, chest pain, heart attack, or any other disease or disorder of the heart or circulatory system? | ☒ | ☐ |
   | b. Asthma, bronchitis, emphysema, or any other disease or disorder of the lungs or respiratory system? | ☐ | ☒ |
   | c. Seizures, stroke, headaches, or any other disease or disorder of the brain or nervous system? | ☐ | ☒ |
   | d. Ulcer, colitis, cirrhosis, hepatitis, or any other disease or disorder of the liver, gallbladder, intestines or stomach? | ☐ | ☒ |
   | e. Any disease or disorder of the kidney, bladder, prostate, reproductive organs, or breasts; sexually transmitted disease; sugar, albumin, blood or pus in the urine? | ☐ | ☒ |
   | f. Diabetes; disorder of the thyroid or lymph glands, or any other endocrine disorders? | ☐ | ☒ |
   | g. Arthritis, gout or disorder of the muscles or bones? | ☐ | ☒ |
   | h. Cancer, tumor, cyst or disorder of the skin? | ☐ | ☒ |
   | i. Anemia, or any other disorder of the blood? | ☐ | ☒ |
   | j. Depression, stress, anxiety, or any other psychological or emotional disorder or symptoms? | ☐ | ☒ |

   Details: List question number. Give dates, duration, treatment and doctors' names and addresses.

   *5-A on 5-1-1982 he had an acute inferior myocardial infarction of the (R) coronary artery. Baptist Memorial Hospital. 899 Madison Ave Memphis, Tn 38104*

3541
(97)                    This Form Can Only Be Used In Tennessee.

000028700169

## Medical Declarations - Completed by Examiner (Cont.)

| | | Yes | No | Details (Cont.): |
|---|---|---|---|---|
| 6. | Are you now under observation or taking medication or treatment? | ☒ | ☐ | |
| 7. | Do you have any doctor's visit or medical care scheduled? | ☒ | ☐ | |
| 8. | Have you: | | | |
| | a. Ever been diagnosed by a member of the medical profession as having AIDS or AIDS Related Complex? | ☐ | ☒ | |
| | b. Tested positive for antibodies to the AIDS (HIV) virus? | ☐ | ☒ | |
| 9. | Other than the above, during the past five years have you had any checkup, illness, injury or health condition; had or been recommended to have any treatment, hospitalization, surgery, medical test or medication? | ☒ | ☐ | |
| 10. | Have you: | | | |
| | a. Used (once or more) or do you now use barbiturates, amphetamines, hallucinogenic drugs (including marijuana), cocaine, heroin, narcotics, or any similar substances or any prescription drug except in accordance with a physician's instructions? | ☐ | ☒ | |
| | b. Been advised to limit or discontinue the use of alcohol or drugs; sought or received treatment, counseling or participated in a group for alcohol or drug use? | ☐ | ☒ | |

Details:

6. Takes Toprol daily as well as Lipitor for condition mentioned in 5A.

7. July 1, 2002 annual physical with Dr. Weiss WH

9. Has thallium profusion scan yearly for condition in 5A also see # 6 for medications. Dr. Frank McGrew - 6005 Park Ave Memphis, Tn 38119 901. 271-1000

**11. Do you exercise?** ☒ Yes  ☐ No   **Type** aerobic   **How often?** 6 days

**12. Are you now pregnant?** ☐ Yes  ☒ No   **If "Yes", estimated date of delivery?**

**13. Family history:**

| | Age if Living | Age at Death | Cause of Death |
|---|---|---|---|
| Father | | 57 | heart attack |
| Mother | 86 | | |
| Brothers and Sisters | B-62 | | |
| | S-63 | | |
| | S-53 | | |

| # Living | # Dead |
|---|---|
| 3 | 0 |

I agree that the statements and answers in this Medical Declarations are true and complete to the best of my knowledge and belief. They, together with the statements and answers in the application and any amendments, will become the basis of any insurance issued and will be part of any policy issued.

**Signed at (City, State)** Cordova, Tn

**Date (MM/DD/YY)** 6-4-02

**Signature of Examiner** Richard Miller MD

**Signature of Proposed Insured - Parent or Guardian if Proposed Insured under age 18.**

313541
(8/97)

This Form Can Only Be Used in Tennessee.

00002

## Medical Declarations - Examiner's Report (Cont.)

Details (Cont.):

**18. Is there, on examination, any abnormality of the following:**
(Circle applicable items and give details.)

|  | Yes | No |
|---|---|---|
| Eyes, ears, nose, mouth, pharynx? (If vision or hearing markedly impaired, indicate degree and correction.) | ☐ | ☑ |
| Skin (including scars); lymph nodes; varicose veins or peripheral arteries? | ☐ | ☑ |
| Nervous system (include reflexes, gait, paralysis)? | ☐ | ☑ |
| Respiratory system? | ☐ | ☑ |
| Abdomen (include scars)? | ☐ | ☑ |
| Genitourinary system? | ☐ | ☑ |
| Endocrine system (thyroid and breasts)? | ☐ | ☑ |
| Musculoskeletal system (include spine, joints, amputations, deformities)? | ☐ | ☑ |
| **19. Are there any hernias?** | ☐ | ☑ |
| **20. Are you aware of additional medical history?** | ☐ | ☑ |

( A confidential report may be sent to the Medical Director.)

**Name of agent requesting this examination.**

Burr Hughes

**Agency**

I certify that I have made the above examination at: Cordova, Tn
(City, State)

at 10:30 Am on this date 6 - 4 - 02
(O'clock AM/PM)   (MM/DD/YY)

American Para Professional Systems
875 Walnut Bend South, Suite 101
Cordova, TN 38018

**Notice: If you are not an appointed MEDICAL EXAMINER of this Company, please provide the following information.**

**Date of Birth (MM/DD/YY)**

**Medical School**

**Address of Examiner**

**Signature of Examiner**

Richard Miller MD

**Mail this report to the Agency Office requesting this examination.**

Provide itemized billing statement and tax I.D. number to:
**General American Life Insurance Company**
Medical Fees (E1-30)
P.O. Box 14490
St. Louis, MO 63178

313541ER
(8/97)

This Form Can Only Be Used in Tennessee

000028

## Medical Declarations – Examiner's Report

**Details (Cont.):**

**14. Height (in Shoes)** 5 ft. 8½ in.    **Weight (Clothed)** 196 lbs.

**Males Only:**

| Chest (Full Inspiration) | Chest (Forced Expiration) | Abdomen (At Umbilicus) |
|---|---|---|
| 44 in. | 42 in. | 37 in. |

Did you measure? ☑ Yes ☐ No
Did you weigh? ☑ Yes ☐ No
Is appearance unhealthy or older than stated age? ☐ Yes ☑ No

**15. Blood Pressure (Record ALL readings)**

| Systolic | 138 | 136 | 136 |
|---|---|---|---|
| Diastolic 5th phase | 88 | 88 | 86 |

**16. Pulse: Exercise, if pulse is irregular.**

| | At Rest | After Exercise | 3 min. Later |
|---|---|---|---|
| Rate | 54 | 62 | 54 |
| Irregularities/min. | 0 | 0 | 0 |

**17. Heart: Is there any:**

Enlargement ☐ Yes ☑ No
Murmur(s) ☐ Yes ☑ No
Dyspnea ☐ Yes ☑ No
Edema ☐ Yes ☑ No

(Describe in "Details" - if more than one, describe separately.)

| Location: | 1st Murmur | 2nd Murmur |
|---|---|---|
| Constant | ☐ | ☐ |
| Inconstant | ☐ | ☐ |
| Transmitted | ☐ | ☐ |
| Localized | ☐ | ☐ |
| Systolic | ☐ | ☐ |
| Diastolic | ☐ | ☐ |
| Grade (Check Intensity) | ☐1 ☐4 ☐2 ☐5 ☐3 ☐6 | ☐1 ☐4 ☐2 ☐5 ☐3 ☐6 |
| After exercise: | | |
| Increased | ☐ | ☐ |
| Absent | ☐ | ☐ |
| Unchanged | ☐ | ☐ |
| Decreased | ☐ | ☐ |

**Indicate:**
Apex by X
Murmur area by ☐
Point of greatest intensity by
Transmission by

**For comments and your impression:**

*normal*

000028

313541ER (6/97)

This Form Can Only Be Used In Tennessee.



**General American**
LIFE INSURANCE COMPANY
ST. LOUIS, MISSOURI 63166

POLICY NUMBER

3,702,002

INSURED
JAMES A BREAZEALE

### LEVEL BENEFIT TERM LIFE INSURANCE
### ANNUALLY RENEWABLE TO AGE 95

#### Non-Participating

Face amount payable at death of insured prior to expiration of initial or renewal term. Renewable to age 95 without evidence of insurability. Convertible prior to the Conversion Date shown on the Policy Specifications page. Re-Entry Privilege available, with evidence of insurability. Premiums payable until the end of initial or renewal term, or until prior death of the insured. If the insured dies prior to the expiration of the initial or renewal term, we will pay the face amount to the beneficiary, subject to the provisions of this policy. We must receive proof of the insured's death. This policy must be surrendered to us after the death occurs. Any payment will be subject to all of the provisions and conditions on this and the following pages of this policy.

#### RIGHT TO EXAMINE POLICY

You may return this policy within twenty days after receiving it. It may be delivered or mailed to us or the agent through whom it was purchased, or to any of our agents. The policy will then be deemed void from the start. Any premium paid will be returned.

This policy is a legal contract between the policyowner and General American. PLEASE READ YOUR CONTRACT CAREFULLY. This cover sheet provides only a brief outline of some of the important features of your policy. This cover sheet is not the complete insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. IT IS, THEREFORE, IMPORTANT THAT YOU READ YOUR POLICY.

Signed for the company at its Home Office, St. Louis, Missouri 63128.  (1-800-638-9294)

James D. Gaughan
Secretary

C. Robert Henrikson
President

100037
(1/2001)

EXHIBIT
B

3,702,002

# ALPHABETIC GUIDE TO YOUR CONTRACT

Section
6  Assignments
6  Beneficiary
6  Change of Owner or Beneficiary
7  Claims of Creditors
7  Conformity with Statutes
7  Contract
5  Conversion Privilege
1  Definitions
2  Grace Period
7  Incontestability
8  Interest on Proceeds

Section
7  Misstatement of Age or Sex
      and Corrections
6  Owner
8  Payment of Policy Benefits
2  Payment of Premiums
2  Premium Refund at Death
4  Re-Entry Privilege
2  Reinstatement
3  Renewal Privilege
7  Statements in Application
7  Suicide Exclusion

Additional Benefit Riders, Modification and Amendments, if any, and a Copy of the Application are found following the final section.

100037
(1/2001)

3,702.002

# POLICY SPECIFICATIONS

## INSURED INFORMATION

| | | | |
|---|---|---|---|
| Policy Number | 3,702,002 | Issue Age | 60 |
| Insured | James A Breazeale | Sex | Male |
| Date of Issue | August 28, 2002 | Risk Classification | |
| | | Special Premium Class | |
| | | Non-smoker | |

## BENEFITS—AS SPECIFIED IN POLICY AND IN ANY RIDER AT ISSUE

| | FACE AMOUNT | ANNUAL PREMIUM | GUARANTEED LEVEL PREMIUM PERIOD* |
|---|---|---|---|
| POLICY PLAN | | | |
| Level Benefit Term Life Insurance Annually Renewable to Age 95 | $3,500,000 | $37,665.00 | 10 Years |
| | | | |
| Total Face Amount/Annual Premium | $3,500,000 | $37,665.00 | |
| Total Premium Payable at Annual Intervals (Includes $75.00 policy fee.) | | $37,665.00 | |

The due dates of premiums after the first are measured from the Date of Issue and are at the intervals specified above.  Premiums reflect non-smoker discounts. These discounts are not guaranteed for any policy on the Insured arising from this policy.

*Premiums after the first are shown in the Schedule of Renewal Premiums.

11272            1

POLICY SPECIFICATIONS                                                3,702,002

IMPORTANT DATES

Conversion Date                                              August 28, 2012

Expiration Date of Initial Term                             August 28, 2003

Expiration Date of Guaranteed Level Premium Period          August 28, 2012

GUARANTEED INTEREST RATE

Guaranteed Interest Rate on Proceeds                             4.0%

SCHEDULE OF RENEWAL PREMIUMS

LEVEL BENEFIT TERM LIFE INSURANCE
ANNUALLY RENEWABLE TO AGE 95

POLICY
NUMBER
3,702,002

INSURING AGE 60

ANNUAL PREMIUMS FOR FACE AMOUNT ON POLICY SPECIFICATIONS PAGE

| RENEWAL AGES | RENEWABLE TERM PREMIUM | TOTAL ANNUAL PREMIUMS |
|---|---|---|
| 61 | $37,665.00 | $37,665.00 |
| 62 | 37,665.00 | 37,665.00 |
| 63 | 37,665.00 | 37,665.00 |
| 64 | 37,665.00 | 37,665.00 |
| 65 | 37,665.00 | 37,665.00 |
| 66 | 37,665.00 | 37,665.00 |
| 67 | 37,665.00 | 37,665.00 |
| 68 | 37,665.00 | 37,665.00 |
| 69 | 37,665.00 | 37,665.00 |
| 70 | 463,055.00 | 463,055.00 |
| 71 | 514,995.00 | 514,995.00 |
| 72 | 575,055.00 | 575,055.00 |
| 73 | 647,645.00 | 647,645.00 |
| 74 | 726,115.00 | 726,115.00 |
| 75 | 810,885.00 | 810,885.00 |
| 76 | 901,745.00 | 901,745.00 |
| 77 | 997,995.00 | 997,995.00 |
| 78 | 1,098,655.00 | 1,098,655.00 |
| 79 | 1,200,155.00 | 1,200,155.00 |
| 80 | 1,311,455.00 | 1,311,455.00 |
| 81 | 1,435,355.00 | 1,435,355.00 |
| 82 | 1,575,355.00 | 1,575,355.00 |
| 83 | 1,733,135.00 | 1,733,135.00 |
| 84 | 1,905,615.00 | 1,905,615.00 |
| 85 | 2,088,875.00 | 2,088,875.00 |

SCHEDULE OF RENEWAL PREMIUMS

LEVEL BENEFIT TERM LIFE INSURANCE
ANNUALLY RENEWABLE TO AGE 95

POLI
NUMB
3,702,0

INSURING AGE 60

ANNUAL PREMIUMS FOR FACE AMOUNT ON POLICY SPECIFICATIONS PAGE

| RENEWAL AGES | RENEWABLE TERM PREMIUM | TOTAL ANNUAL PREMIUMS |
|---|---|---|
| 86 | $2,279,275.00 | $2,279,275.00 |
| 87 | 2,475,135.00 | 2,475,135.00 |
| 88 | 2,672,535.00 | 2,672,535.00 |
| 89 | 2,874,135.00 | 2,874,135.00 |
| 90 | 3,082,735.00 | 3,082,735.00 |
| 91 | 3,301,835.00 | 3,301,835.00 |
| 92 | 3,538,575.00 | 3,538,575.00 |
| 93 | 3,802,895.00 | 3,802,895.00 |
| 94 | 4,139,175.00 | 4,139,175.00 |

# 1. DEFINITIONS IN THIS POLICY

| | |
|---|---|
| **We, Us and Our** | General American Life Insurance Company. |
| **You and Your** | The owner of this policy. The owner may be someone other than the insured. |
| | In the application the words "You" and "Your" refer to the proposed insured person(s). |
| **Insured** | The person whose life is insured under this policy as shown on the Policy Specifications page. |
| **Issue Age** | The age of the insured as of his or her birthday nearest to the date of issue. |
| **Date of Issue** | The date of issue is the effective date of the coverage under this policy. The date of issue is shown on the Policy Specifications page. It is also the date from which policy anniversaries, policy years, and premium due dates are measured. |
| **Proceeds** | The amount payable as a result of the insured's death. This includes: |

1. the face amount of the policy, plus
2. any amount payable under an attached rider, plus
3. any premium refund, minus
4. any premium due during the grace period.

# 2. PREMIUMS AND GRACE PERIOD

**Payment of Premiums**

Your first premium is due as of the date of issue. While the insured is living, premiums after the first must be paid in advance at our Home Office. You may pay your premiums annually, semiannually, or at other intervals we may establish from time to time. This right is subject to our rates and minimum premium requirement at the date of issue. When the premium for any rider is no longer payable, the total premium will be reduced accordingly. A premium receipt will be furnished upon request if you pay the Home Office.

If this policy is in your possession and you have not paid the first premium, it is not in force. It will be considered that you have the policy for inspection only.

**Grace Period**

Your premium is in default if you do not pay it on or before its due date. We will allow a grace period of 31 days after the premium due date for payment of each premium except the first. A notice will be sent to you, at your last known address, and any assignee of record. During this period no interest will be charged on the premium due, and the policy will remain in force. If the insured dies during the grace period, the amount of any unpaid premium due through the date of death will be deducted from the proceeds of the policy.

If any premium remains unpaid after the grace period, this policy will cease and become void.

103035 1
(1/2001)

3,702;002

**Reinstatement**

Within three years after a default in premium payment, but no later than the policy anniversary nearest the insured's 95th birthday, you may apply for reinstatement if:

1. You submit proof satisfactory to us that the insured is insurable by our standards; and

2. You pay all overdue premiums with interest at 6% per year compounded annually to the date of reinstatement; and

3. The insured is alive on the date we approve the request for reinstatement. If the insured is not alive, such approval is void and of no effect.

Any application for reinstatement becomes part of the contract of reinstatement and of this policy.

Subject to the above requirements, the effective date of reinstatement will be the date we approve the request for reinstatement. We will advise you of the reinstatement effective date.

**Premium Refund at Death**

Any part of a premium which pays the policy to a date beyond the insured's death will be refunded as part of the policy proceeds. This provision does not apply to any premium waived by a waiver of premium benefit rider.

103035 2
(1/2001)

3,702,002

## 3.   RENEWAL PRIVILEGE

You may renew this policy without giving us proof that the insured is then insurable by our standards. However, you may not renew this policy beyond the policy anniversary nearest the 95th birthday of the insured. To renew the policy you must pay the proper premium shown on the premium billing notice. The premium must not be paid later than 31 days after the end of each preceding term. Each renewal will be for a term of one year and will begin when the preceding term ends.

If your policy has a waiver of premium rider, and if the insured becomes disabled as defined in such rider, this Renewal Privilege will be applied automatically according to the provisions of such rider.

## 4.   RE-ENTRY PRIVILEGE

At any time after the expiration date of the guaranteed level premium period, you may apply for a new policy of this plan; subject to:

1.   Proof of insurability acceptable to us; and
2.   The insured's age not being greater than the maximum issue age for this policy at the time of re-entry.

The request for a new policy must be made to us in writing prior to the desired issue date of the new policy. The date of issue of the new policy will be the date of re-entry. The issue age will be the insured's age on the date of re-entry. We will determine the risk classification and approve the amount of insurance based on the evidence of insurability provided. The time periods in the Suicide Exclusions and Incontestability provisions will begin on the date of re-entry. The premiums for the new policy will be based on:

1.   The premium rates in effect on the issue date of the new policy; and
2.   The insured's age on the issue date of the new policy.

## 5.   CONVERSION PRIVILEGE

While this policy is inforce, you may exchange this policy in its entirety for a new policy by making a written request prior to the Conversion Date shown on the Policy Specifications page.

The new policy will be a single life policy with cash value offered by us, or an affiliate designated by us, at the date of issue of your new policy.   We guarantee that a policy will be made available.

It will be subject to the following provisions:

1.   The amount converted will not be greater than the face amount of this policy.
2.   The amount will be subject to the regular company limits on the date of issue of the new policy for the chosen plan of insurance.  If the amount to be converted is less than our regular issue limits we may substitute an alternate plan.  Regardless of amount, some plan will always be made available.

You do not need to give proof that the insured is then insurable by our standards if the new policy will be issued for the same or lower face amount as this policy and will not have any riders attached. If the face amount of the new policy increases or riders are to be attached to the new policy, then the exchange may be made only if the insured is then insurable. We will use the same underwriting standards as we are then using on applications for new insurance when considering whether the insured is insurable.

104027  1
(1/2001)

3,702,002

The date of issue of the new policy will be the nearest monthly anniversary of this policy on the date of exchange. You must pay all premiums in accordance with the terms of the new policy. The premium rate for the new policy will be based on the age and sex of the insured and our rates on the date of exchange, and the same risk classification, if available, or the nearest comparable risk classification for this policy.

The time periods in the Suicide Exclusion and Incontestability provisions of the new policy will start with this policy's date of issue. If there is an increase in face amount, the time periods in the Suicide Exclusion and Incontestability provisions will apply only to the increased amount and will be measured from the new policy's date of issue.

If this policy has a Waiver of Premium rider as a part of it and the insured becomes disabled as defined in that rider, the Term Conversion provision of the Waiver of Premium rider will modify the Conversion Privilege section of this policy.

104027  2
(1/2001)


3,702,002

## 6. PERSONS WITH AN INTEREST IN THE POLICY

**Owner**

The owner is as shown in the application or in any supplemental agreement attached to this policy, unless later changed as provided in this policy. You, as owner, are entitled to all rights provided by this policy, prior to its termination. Ownership may be changed in accordance with the Change of Owner or Beneficiary provision. Any person whose rights of ownership depend upon some future event will not possess any present rights of ownership. If there is more than one owner at a given time, all must exercise the rights of ownership by joint action.

**Beneficiary**

The beneficiary to receive the proceeds in the event of the insured's death is as shown in the application or in any supplemental agreement attached to this policy, unless later changed as provided in the policy. You may change the beneficiary in accordance with the Change of Owner or Beneficiary provision. Unless otherwise stated, the beneficiary has no rights in this policy before the death of the insured. If there is more than one beneficiary at the death of the insured, each will receive equal payments, unless otherwise provided. Unless you provide otherwise, if a beneficiary dies prior to the insured's death, that beneficiary's share will be paid to the living beneficiaries of that class. The deceased beneficiary's share will be paid in the same proportion as the living beneficiaries' shares. If there are no beneficiaries living when the insured dies, or at the end of any Common Disaster period, the proceeds (commuted if required) will be payable to you, if you are living, or to your estate.

**Change of Owner or Beneficiary**

During the lifetime of the insured you may change the ownership and beneficiary designations. You must make the change in a form satisfactory to us. If acceptable to us, the change will take effect as of the time you authorized the request, whether or not the insured is living when we receive your request at our Home Office. The change will be subject to any assignment of this policy or other legal restrictions. It will also be subject to any payment we made or action we took before we received your written notice of the change. We have the right to require the policy for endorsement before we accept the change.

If you are also the beneficiary of the policy at the time of the insured's death, you may designate some other person to receive the proceeds of the policy within 60 days after the insured's death.

**Assignments**

We will not be bound by an assignment of the policy or of any interest in it unless:

1. The assignment is made by a written instrument,

2. You file the original instrument or a certified copy with us at our Home Office, and

3. We send you an acknowledgement.

We are not responsible for the validity of any transfer or assignment.

If a claim is based on an assignment, we may require proof of interest of the claimant. A valid assignment will take precedence over any claim of a revocable beneficiary.

106027 1
(1/2001)

3,702,002

# 7. THE CONTRACT

**The Contract**

We have issued this policy in consideration of the application and payment of premiums. The policy, the application for it, any riders or endorsements, copies of which are attached to and made a part of the policy, are the entire contract. A copy of any application for reinstatement will be sent to you for attachment to this policy and will become part of the contract of reinstatement and of this policy. In addition, any evidence of insurability required for changes to this policy will also be attached to and made a part of this policy. This policy may be changed by our mutual agreement. Any change must be in writing and approved by our President, Vice President, or Secretary. Our agents have no authority to alter or modify any terms, conditions, or agreements of this policy, or to waive any of its provisions.

**Conformity with Statutes**

If any provision in this policy is in conflict with the laws of the state which govern this policy, the provision will be deemed to be amended to conform with such laws. In addition, we reserve the right to change this policy if we determine that a change is necessary to cause this policy to comply with, or give you the benefit of, any federal or state statute, rule or regulation, including but not limited to requirements for life insurance contracts under the Internal Revenue Code, or its regulations or published rulings. You will be given the right to reject this change.

**Misstatement of Age or Sex and Corrections**

If the age or the sex of the insured has been misstated on the application, any amount payable on the policy will be such as the premium paid would have purchased, according to the rate at the date of issue, had the insured's age and sex been correctly stated. If we make any payment or policy changes in good faith, relying on our records, or evidence supplied to us, we will be fully discharged. We reserve the right to correct any errors in the policy.

**Statements in Application**

All statements made by the insured or on his or her behalf, or by the applicant, will be deemed representations and not warranties, except in the case of fraud. Material misstatements will not be used to void the policy or deny a claim unless made in the application, a copy of which is attached to and made a part of the policy when issued or delivered.

**Incontestability**

We cannot contest this policy, except for nonpayment of premium, after it has been in force during the lifetime of the insured for a period of two years from the date of issue. We cannot contest any reinstatement of this policy, with regard to material misstatements made concerning such reinstatement, except for nonpayment of premium, after it has been in force during the lifetime of the insured for a period of two years from the date we approve the reinstatement. This provision will not apply to any rider which contains its own incontestability clause.

**Suicide Exclusion**

If the insured dies by suicide, while sane or insane, within two years from the issue date (or within the maximum period permitted by law of the state in which this policy was delivered, if less than two years), the amount payable will be limited to the amount of premiums paid.

**Claims of Creditors**

To the extent permitted by law, neither the policy nor any payment under it will be subject to the claim of creditors or to any legal process.

106027 2
(1/2001)

3,702,002

## 8. PAYMENT OF POLICY BENEFITS

**Payment**

A lump sum payment will be made as provided on the face page.  Settlement will be made within two months after receipt of due proof of death.

**Interest on Proceeds**

We will pay interest on proceeds from the date of the insured's death to the date of payment.  Interest will be at an annual rate determined by us, but never less than the Guaranteed Interest Rate on Proceeds shown on the Policy Specifications page or the legal rate of the state which governs this policy, if higher.

**Extended Provisions**

Provisions for settlement of proceeds different from a lump sum payment may only be made upon written agreement with us.

007001  1
(1/2001)

3,702,002

# IMPORTANT INFORMATION TO POLICYHOLDERS

In the event you need to contact someone about this policy for any reason please contact your agent. If you have additional questions you may contact the insurance company issuing this policy at the following address and telephone number:

**General American Life Insurance Co.**
**Policyholder's Service Dept.**
**13045 Tesson Ferry Rd.**
**St. Louis, MO 63128**
**(314) 843-8700**

Written correspondence is preferable so that a record of your inquiry is maintained. When contacting your agent or the company, be sure to tell them your policy number.



1092641
(1/89)

3,702,002

| For H.O. Use Only | **MetLife** |
|---|---|

**To: Underwriting & Issue**
☐ Home Office
☐ _____ Head Office

□ *Metropolitan Life Insurance Company*
□ *Metropolitan Insurance and Annuity Company*
   *One Madison Avenue*
   *New York, NY 10010-3690*
□ *Security First Life Insurance Company*
   *1300 Business Trust Building*
   *P.O. Box 29150*
   *Wilmington, DE 19898*

**From**
**District/Branch** 71/6

**Agency No./**
**Index** 356-1   **Representative** BURR. Hughes

**Application for Reissue of a New Policy**

**Name(s) of Insured(s) (Full First Name, Middle Initial, Last Name)**
James A. Breazeale

**Present Policy Number**
3,702,002

Please reissue present policy with changes as indicated below.

| Item | Amended Answer | Item | Amended Answer |
|---|---|---|---|
| **Plan** | | **Complete for Universal Life Policies: Death Benefit** | ☐ Opt A  ☐ Opt B  ☐ Opt C |
| Date (Do not request a future issue date) | | Planned Premium Amount | $ |
| Initial or Face Amount of Insurance 3,500,000 | $ _____ Insurance on Proposed Insured | Extra Premium Amount (Issuable in Age (For FFHL only) | $ _____ ☐ 65  ☐ 75  ☐ 85 |
| Disability Waiver of Premium Benefit | ☐ With Benefit  ☐ Without Benefit | Disability Waiver of Monthly Deduction | ☐ With Benefit  ☐ Without Benefit |
| Accidental Death Benefit | ☐ With Benefit | Disability Waiver of Specified Premium | $ |
| Family Income Benefit | ☐ With $ _____ per month to _____ in Policy Anniversary | | ☐ Without Benefit |
| Level Term Benefit | With _____ times Face Amount of Amount $ _____ ☐ 10 Years  ☐ 15 Years | | ☐ Without Benefit |
| Guarantee Issue Rider | With Amount $ _____ | | ☐ Without Benefit |
| Income Benefit on Spouse | ☐ With $ _____ per month to _____ in Policy Anniversary | | ☐ Without Benefit |
| Spouse Term Benefit | With Amount $ _____ | | ☐ Without Benefit |
| Children's Term Benefit | With Amount $ _____ | | ☐ Without Benefit |
| Other Benefits | | | |

| Date of Birth | Month | Day | Year |
|---|---|---|---|
| | | | |

I do not accept the present policy as offered; I request that the policy be reissued as shown in this Application. Any policy issued as a result of this application will be based on the statements and answers in the application for the present policy except as amended by this form.

I understand that my Temporary Insurance provided under the application for the present policy has ended, unless I request a refund, the Company checked above will previously hold any premium paid for the present policy and, if such policy is reissued, will apply it to the reissued policy. The Company will have no liability under this application, until a reissued policy is delivered personally to the insured, and the first premium due is paid. The policy will then be in effect as of its date of issue, but it will not be in effect unless at the time it is delivered:

(a) the condition of health of each person to be insured, and the Applicant if the Applicant's Waiver of Premiums Benefit is applied for, is the same as given in the application for the policy related to above; and

(b) no person to be insured nor the Applicant if the Applicant's Waiver of Premiums Benefit is applied for, has received any medical advice or treatment from a physician or other practitioner since the date of that application.

To the best of my knowledge and belief, the statements and answers in this application as amended by this form are true and complete as of the date this form is signed. There are no facts or circumstances which would require a change in the answers in the application, except as shown above.

| Witness (Licensed Resident Agent) | Place | Mo. Day Yr. | Signature |
|---|---|---|---|
| Witness to signature | Memphis TN | 10/2/02 | (A) Proposed Insured #1/Applicant |
| Witness to signature (P) | | | (B) Proposed Insured #2/Spouse Parent, Guardian, or Person Liable for Child's Support (if other than applicant) |
| Witness to Signature In (C) or (D) | Memphis TN | 10/2/02 | X Lisa B. Roberts  Trustee (C) Owner (if other than (A) above) |

If Owner is a firm or corporation, enter on line (C) full business name, and have one or more partners or officers (other than Proposed Insured) sign on line (D), and give their titles.   (D) _____

02103 (12-93)   See Instructions on next page   TMO00470639 (1/2001) Printed in U.S.A.

1187020256048 0366

Application for Life Insurance

# General American

Life Insurance Company
St. Louis, Missouri

## Proposed Insured

| Name (Last, First, Middle) | | Gender |
|---|---|---|
| Breazeale, James A. | | ☒ Male<br>☐ Female |

| Social Security # | Date of Birth (MM/DD/YY) | Age (Nearest Birthday) | Birthplace |
|---|---|---|---|
| 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 | 09/28/42 | 60 | TN |

| Home Address (Street, City, State, Zip) | Email Address | Home Phone |
|---|---|---|
| 1863 Cordova Road<br>Germantown, TN  38138 | | ( 901 ) 754-5511 |

| Name and Address of Employer | Years Employed | Work Phone |
|---|---|---|
| Valley Products Co.<br>384 E. Brooks Road<br>Memphis, TN  38109 | | ( 901/396-9646 |

| Occupation | Annual Earned Income From Occupation | Net Worth |
|---|---|---|
| CHAIRMAN OF BOARD | $ 500,000 + | $ 6,000,000 |

## Beneficiary

| Primary | Contingent |
|---|---|
| Valley Products Co<br>384 E. Brooks Rd<br>Memphis TN 38109 | |

## Owner

☐ Proposed Insured (Do not designate a Contingent Owner.)

☒ Other (Provide Full Name, Address, Phone Numbers, Email Address, Date of Birth & Relationship of each to Proposed Insured.)

| Original | Contingent |
|---|---|
| Valley Products Co<br>384 E. Brooks Rd<br>Memphis, TN 38109 | |

Social Security or Tax # of Original Owner (Required By Law)

## Premium Payor

☐ Proposed Insured   ☒ Owner   ☐ Employer   ☐ Other: (Provide Full Name and Billing Address.)

1067741B
(4/2001)

8910821117633

## Coverage Application — Benefits and Riders

| Special Issue Date | | Base Face Amount | $ 4,500,000 |
|---|---|---|---|

Plan: **Level Term 10yr**

Contract Type (UL and VUL): Option: ☐ Level (A)   ☐ Increasing (B)   ☐ Cash Value Accum Test (C)

### Benefits and Riders

| Traditional | UL | VUL |
|---|---|---|
| ☐ Waiver of Premium | ☐ Waiver of Monthly Deduction | ☐ Waiver of Monthly Deduction |
| ☐ Accelerated Benefits (Complete Disclosure.) | ☐ Waiver of Specified Premium $_____ (Monthly Premium) | ☐ Waiver of Specified Premium $_____ (Monthly Premium) |
| ☐ Decreasing Specified Term II $_____ | ☐ Accelerated Benefits (Complete Disclosure.) | ☐ Guaranteed Survivor Purchase Option Plus $_____ on _____ |
| ☐ Level Specified Term II $_____ | ☐ Anniversary Partial Withdrawal | $_____ on _____ (Complete App. for each life.) |
| ☐ Premium Additions Rider (Face Amt.) $_____ | ☐ Guaranteed Survivor Purchase Option Plus $_____ on _____ | ☐ Anniversary Partial Withdrawal |
| ☐ Values Plus One Units #_____ | $_____ on _____ (Complete App. for each life.) | ☐ Accelerated Benefits (Complete Disclosure.) |
| ☐ Automatic Purchase Option $_____ Yr. | ☐ Supplemental Coverage Term Rider/ Joint Supplemental Coverage Term Rider $_____ | ☐ Adjustable Benefit Term Rider |
| ☐ Guaranteed Survivor Purchase Option $_____ on _____ | ☐ Lifetime Coverage Rider | ☐ Estate Preservation Term Rider $_____ |
| $_____ on _____ (Complete App. for each life.) | ☐ Secondary Guarantee Rider | ☐ Supplemental Coverage Term Rider/ Joint Supplemental Coverage Term Rider $_____ |
| ☐ Other _____ $_____ | ☐ Other _____ $_____ | ☐ Lifetime Coverage Rider |
| ☐ Other _____ $_____ | ☐ Other _____ $_____ | ☐ Secondary Guarantee Rider |
| ☐ Other _____ $_____ | ☐ Other _____ $_____ | ☐ Other _____ $_____ |
| | | ☐ Other _____ $_____ |
| | | ☐ Other _____ $_____ |
| | | Complete #7 for VUL Suitability and separate VUL Supplement to elect funds. |

## Premiums and Dividends

**Billing**

☐ Pre-Authorized Check Monthly
☑ Direct   ☐ Combined Direct (Traditional)
☐ List   ☐ Single Premium (UL and VUL)

Add to Existing Bill # _____

**Dividend Option (if eligible)**

☐ Pd. Up Addns. (Trad.)   ☐ Cash
☐ Reduce Prem. (Trad.)   ☐ Accum. (Trad.)
☐ Inc. Cash Value (UL and VUL)

**Mode**

☒ Annual   ☐ Semi-Annual
☐ Quarterly   ☐ Monthly (List or PAC only.)

Note:  Paying your insurance premiums more often than annually (more often than once a year) will cost more than paying them once a year. (Not applicable for UL/VUL plans.)

Premium Amt. (UL and VUL)   $ 24,240.00

**Automatic Premium Payment**

(Traditional)
☐ Div. Accum.   ☐ Loan
☐ Both   ☐ Neither

1057741B
(4/2001)

6a4082117833

## 7. VUL Suitability

|  | Yes | No |
|---|---|---|
| Have you received a Prospectus/Memorandum of Understanding for the policy applied for? | ☐ | ☐ |

Date of Prospectus/Memorandum [ ]   Date of any supplement [ ]

Is a current Customer Information Statement for this owner on file with the selling broker-dealer?
(If "No", one must be submitted with this application.) ☐ ☐

Do you understand that:
1. The death benefit and cash surrender value will increase or decrease depending on investment experience? ☐ ☐
2. There is no guaranteed minimum death benefit or cash surrender value? ☐ ☐

Do you believe that the policy applied for meets your insurance needs and your anticipated financial objectives? ☐ ☐

☐ I request a copy of the Statement of Additional Information for the following Investment Company(ies):

[ ]

## 8. Additional ☐ Replacement ☐ Insurance(Life) and detail illustration for each.

Provide details including plan, amount and riders. If Beneficiary and Owner other than original, indicate below.

[ ]

## 9. Other Insurance

a. Total Life Insurance now in force on Proposed Insured. If "None", check ☐

| Company and Policy # | Year of Issue | Personal Ins. Amt. | Business Ins. Amt. | Accidental Death Amt. | Waiver of Prem. Yes | No |
|---|---|---|---|---|---|---|
| CNa 01507765 | | 95,000 | | | | |
| TRANS america 93007241 | 1984 | 252,761 | | | | |
| 93023952 | 1984 | 505,746 | | | | |

If additional space is needed, provide information in "Details" below.

|  | Yes | No |
|---|---|---|
| b. Are you currently applying for life insurance with any other company? (If "Yes", provide information in "Details" below.) 4,500,000 Emp. Gar. only then one wee | ☒ | ☐ |
| c. Will the insurance being applied for replace any of the above or any in force annuities? to purchase | ☐ | ☒ |
| d. Will the insurance being applied for receive any values (to pay premiums or additional payments) from another policy/contract? | ☐ | ☒ |

If either "c" or "d" is answered "Yes", circle affected coverage above or indicate in "Details" below.
Policy/contract number MUST be provided. (Complete and submit required replacement forms.)

## 10. General Information

Have you: (Provide explanation of "Yes" answers in "Details" below.)

|  | Yes | No |
|---|---|---|
| a. Ever been declined, postponed, rated or offered a policy different than that applied for? | ☐ | ☒ |
| b. Any intention to travel or reside outside the United States? | ☐ | ☒ |
| c. Been a pilot or student pilot during the past 3 years or have any intention of becoming a pilot or student pilot in any type of aircraft? (If "Yes", complete Aviation Supplement.) | ☐ | ☒ |
| d. Participated in, or do you contemplate participating in: aeronautics, competitive racing, underwater or sky diving, mountain climbing, or any other similar avocation? (If "Yes", complete Avocation Supplement.) | ☐ | ☒ |
| e. Ever had a traffic citation for driving while intoxicated or driving under the influence of intoxicants or drugs? | ☐ | ☒ |
| f. Within the past three years, had any moving vehicle violation? | ☐ | ☒ |

Provide Driver's License # [ 354 39200 ]   State [ TN ]

1067741B
(4/2001)

6910021117033

**11. Details for "Yes" Answers Above/Additional Information**

**12. Home Office Endorsements Only**

**Declarations**

I agree that:
- The statements and answers in this application and any amendments to it, in any supplements, or made to the medical examiner are true and complete to the best of my knowledge and belief and will be the basis of any insurance issued and will be part of any policy issued.
- Knowledge of the agent or medical examiner will not be imputed to the Company unless stated in this application or any amendments to it, or in any supplements or medical reports received in the Home Office. No printed provision of this application will be modified or waived except by an endorsement signed by an officer at the Home Office. No agent or medical examiner has the authority to make or alter any contract for the Company.
- My acceptance of any insurance policy means I agree to any changes shown in #12, where state law permits Home Office endorsements.
- If a premium payment is given in exchange for a Temporary Insurance Agreement (TIA), the Company will be liable as set forth in that Agreement.
- If a premium payment is not given, then insurance will take effect when a policy is approved by the Company for issue as applied for, the first full premium is paid and the health and insurability of any person proposed for insurance have not changed since the date of this app.
- If a policy is issued other than as applied for, insurance will take effect under the policy only when a policy issued by the Company is delivered to and accepted by me, the first full premium is paid, and the health and insurability of any person proposed for insurance have not changed since the date of this application.
- It is a crime to knowingly provide false, incomplete or misleading information to an insurance company for the purpose of defrauding the company. Penalties include imprisonment, fines and denial of insurance benefits.

The Applicant and agent certify that the Applicant has read, or had read to him or her the completed application and that he or she realizes that any false statement or misrepresentation therein may result in loss of coverage under the policy.

**This contract may be subject to taxation as described in the Internal Revenue Code.**

**CERTIFICATION: Under penalties of perjury, I certify that:**

(1) The number shown on this form is my correct Taxpayer Identification Number (or, if no number is shown, I am waiting for a number to be issued to me); and

(2) I am not subject to backup withholding either because I have not been notified by the Internal Revenue Service (IRS) that I am subject to backup withholding as a result of a failure to report all interest or dividends, or the IRS has notified me that I am no longer subject to backup withholding.

**\*\*PLEASE NOTE: You must cross out and initial #(2) above if you have been notified by the IRS that you are currently subject to backup withholding because of under-reporting interest or dividends on your tax return.\*\***

The IRS does not require your consent to any provision of this document other than the certifications required to avoid backup withholding.

Date (MM/DD/YY) 6/19/07          Signed At (City, State) Memphis, TN

Signature of Proposed Insured Parent or Guardian
if Proposed Insured under age 18

Signature, Name and Address of Applicant/ Owner if other than Proposed
Insured (If Owner is a Corporation, Partnership or Trust, an authorized
officer, partner or trustee must sign and state title.)

I certify that I have truly and accurately recorded on all parts of this application the information supplied by the Applicant. In light of the financial need of the Proposed Insured and Owner, the purpose of this sale has been discussed with the Owner, and I believe this application to be a suitable recommendation.

1. ____ To the best of my knowledge, this is a replacement.          X To the best of my knowledge, this is not a replacement.
       (Complete and submit required replacement forms.)

2. ____ For VUL: Did you deliver the current Prospectus/Memorandum of Understanding and were all of the written sales materials
       used printed by General American Life Insurance Company?   ☐ Yes   ☐ No

(Signature of Licensed Agent)

1067/41B
(4/2001)

6a1867117833

**General
American**
Life Insurance Company
St. Louis, Missouri

## Medical Declarations - Completed by Examiner

1. Proposed Insured's Name *(Last, First, Middle)* | Date of Birth *(MM/DD/YY)*

   James  A.  Breazeale | 9-28-42

2. a. Who is the doctor who can give us the most complete and up to date information concerning your present health?   If "None", check ☐

   Name and Address *(Street, City, State, Zip)* | Phone

   Dr. William Weiss
   6097 Walnut Grove Rd
   Memphis, Tn 38120 | (901) 763-1695

   b. When was this doctor last consulted? 7-2001   Why? physical- wnl

   c. What treatment was given or medication prescribed?   If "None", check ☐

   refill on current meds.

3. Height  Weight .  Any weight loss in the past year?  ☐ Yes  ☑ No

   5'10  194   If "Yes", reason

4. a. Do you use tobacco or nicotine products? ☐ Current  ☑ Past-date last used 5-1-1982  ☐ Never

   b. Type  ☑ Cigarettes  ☐ Pipe/Cigar  ☐ Chew  ☐ Patch/Gum

   Amount/Frequency  ½ ppd

5. Within the last ten years have you had, been treated for, or diagnosed as having:

   | | Yes | No | Details: List question number. Give dates, duration, treatment and doctors' names and addresses. |
   |---|---|---|---|
   | a. High blood pressure, chest pain, heart attack, or any other disease or disorder of the heart or circulatory system? | ☑ | ☐ | 5-A on 5-1-1982 he had an acute inferior myocardial infarction of the (R) coronary artery. Baptist Memorial Hospital. 899 Madison Ave Memphis, Tn 38104 |
   | b. Asthma, bronchitis, emphysema, or any other disease or disorder of the lungs or respiratory system? | ☐ | ☑ | |
   | c. Seizures, stroke, headaches, or any other disease or disorder of the brain or nervous system? | ☐ | ☑ | |
   | d. Ulcer, colitis, cirrhosis, hepatitis, or any other disease or disorder of the liver, gallbladder, intestines or stomach? | ☐ | ☑ | |
   | e. Any disease or disorder of the kidney, bladder, prostate, reproductive organs, or breasts; sexually transmitted disease; sugar, albumin, blood or pus in the urine? | ☐ | ☑ | |
   | f. Diabetes; disorder of the thyroid or lymph glands, or other endocrine disorders? | ☐ | ☑ | |
   | g. Arthritis, gout or disorder of the muscles or bones? | ☐ | ☑ | |
   | h. Cancer, tumor, cyst or disorder of the skin? | ☐ | ☑ | |
   | i. Anemia, or any other disorder of the blood? | ☐ | ☑ | |
   | j. Depression, stress, anxiety, or any other psychological or emotional disorder or symptoms? | ☐ | ☑ | |

3541
(97)

This Form Can Only Be Used In Tennessee.

0.00028260016

**Medical Declarations – Completed by Examiner (Cont.)**

| | Yes | No | Details (Cont.): |
|---|---|---|---|

6. Are you now under observation or taking medication or treatment? — Yes ☑ No ☐

7. Do you have any doctor's visit or medical care scheduled? — Yes ☑ No ☑

8. Have you:
   a. Ever been diagnosed by a member of the medical profession as having AIDS or AIDS Related Complex? — Yes ☐ No ☑
   b. Tested positive for antibodies to the AIDS (HIV) virus? — Yes ☐ No ☑

9. Other than the above, during the past five years have you had any checkup, illness, injury or health condition; had or been recommended to have any treatment, hospitalization, surgery, medical test or medication? — Yes ☑ No ☑

10. Have you:
    a. Used (once or more) or do you now use barbiturates, amphetamines, hallucinogenic drugs (including marijuana), cocaine, heroin, narcotics, or any similar substances or any prescription drug except in accordance with a physician's instructions? — Yes ☐ No ☑
    b. Been advised to limit or discontinue the use of alcohol or drugs; sought or received treatment, counseling or participated in a group for alcohol or drug use? — Yes ☐ No ☑

Details:
6. Takes Toprol daily as well as Lipitor for condition mentioned in 5A.

7. July 1, 2002 annual physical with Dr. Weiss WNL

9. Has thallium profusion scan yearly for condition in 5A also see # 6 for medications. Dr. Frank McGrew - 6005 Park Ave Memphis, Tn 38119 901-271-1000

11. Do you exercise? ☑Yes ☐ No   Type  aerobic   How often?  6 days

12. Are you now pregnant? ☐ Yes ☑No   If "Yes", estimated date of delivery? _____

13. Family history:

| | Age if Living | Age at Death | Cause of Death |
|---|---|---|---|
| Father | | 57 | heart attack |
| Mother | 86 | | |
| Brothers and Sisters | B-62 | | |
| | 5-63 | | |
| | 5-53 | | |

| # Living | # Dead |
|---|---|
| 3 | 0 |

I agree that the statements and answers in this Medical Declarations are true and complete to the best of my knowledge and belief. They, together with the statements and answers in the application and any amendments, will become the basis of any insurance issued and will be part of any policy issued.

Signed at (City, State)  Cordova, Tn

Date (MM/DD/YY)  6-4-02

Signature of Examiner  Richard Miller MD

Signature of Proposed Insured – Parent or Guardian if Proposed Insured under age 18. _____

313541 (5/97)

This Form Can Only Be Used In Tennessee.

000028

## LEVEL BENEFIT TERM LIFE INSURANCE
## ANNUALLY RENEWABLE TO AGE 95

**Non-Participating**



**LIFE INSURANCE COMPANY**
**ST. LOUIS, MISSOURI 63166**

100037
(1/2001)

DUPLICATE POLICY

3,702.002

06/23/2003 MON 10:19 FAX 901754420 METLIFE

** TOTAL PAGE.01 **

18-2003 16:08          INDIVIDUAL FINANCE

CS: 3456393 - PAID DATE: 11-12-2002

General American

DATE: OCTOBER 24, 2002

FOR: POLICY 5702802, REFUND OF INITIAL PREMIUM OVERPAYMENT

NO. 1647119

$11,838.00

PAY: $11,838.00

TO THE ORDER OF    VALDEZ PRODUCTS CO
384 E BROOKS RD
MEMPHIS TN 38109

EXHIBIT
C

PCA/ALA   FIELD   FILE

**GENERAL AMERICAN** LIFE INSURANCE COMPANY ° ST. LOUIS, MO. 63166

POLICY DATA SHEET

| PREFIX | POLICY NUMBER | POL. DEL. CLASS | REISSUE | COVERAGE | AMOUNT | PREMIUM | PREM. PRO. YEARS | EXTRA PREM. |
|--------|---------------|-----------------|---------|----------|--------|---------|------------------|-------------|
| | 3,702,002 ORIGINAL | | YES | GLT-10   901 | 3500000 | 26052.00 | 1 | 24165.00 |

NAME OF INSURED

**BREAZEALE JAMES A**

NAME OF PREMIUM PAYOR

**VALLEY PRODUCTS CO**

ADDRESS FOR PREMIUM BILLING

**384 E BROOKS RD**
**MEMPHIS TN 38109**

TOTAL ANNUAL PREMIUM   **$26052.00**

RATINGS

1: NO EI, GLT-10 200% OF STD PREM (TBL D)

**BILLING DATA**

| MODE | BILLING OR FRANCHISE NUMBER | LTR | EMPLOYEE DEDUCTION NUMBER |
|------|----------------------------|-----|---------------------------|
| DA | | | |

**ISSUE DATA**

| ISSUE DATE | APP. DATE | EXEC. DATE | BIRTH DATE | AGE | SEX | RISKCLASS. |
|------------|-----------|------------|------------|-----|-----|------------|
| 02-08-28 | 02-06-19 | 02-10-18 | 42-09-28 | 50 | M | SPECIAL |

**MODE PREMIUMS**

| SEMI-ANNUAL | QUARTERLY | MONTHLY |
|-------------|-----------|---------|
| 13339.62 | 6748.47 | 0.00 |

PAYABLE FOR MO.   PAC/PDC/PTT

DUE 1 2 3 4 5 6   2267.02   0.00
7 8 9 10 11 12

PRELIMINARY TERM

**MISCELLANEOUS DATA**

| REINS. | DIV. OPTION / EXCESS INTEREST CR. OPTION | APP OPTION | RISK STATUS | OWNER CODE | COMMUTATION OPTION-FP | CONVERSION DATE |
|--------|------------------------------------------|-----------|-------------|------------|----------------------|------------------|
| A | | D&L | 5 | B | | 12-08-28 |

GPO OPT. DATE   PAID UP   MATURES

| | | TERM EXPIRY OR RENEWAL | FIRST ANNUITY PAYMENT DUE |
|--|--|------------------------|---------------------------|
| | | 03-08-28 | |

**AGENCY DATA**

| CONTRACT CODES | | | | NAME OF SOLICITING AGENT | SHARE | N M | NAME OF MULTIPLE AGENCY CITY AND/OR GENERAL AGENT |
|----------------|--|--|--|--------------------------|-------|-----|--------------------------------------------------|
| MA/DGA | MGA | SOL. AGT. | SEQ. NO. | | | | |
| 2380 | 0900 | 313942 | 01 | BURR D HUGHES III, CLU | 100 | Y | METLIFE GENERAL INS AGCY |

ANNUALIZE COMMISSION -   **NO**        CONTEST -   **NO**        PERSISTENCY RATER -        **NON SMOKER**

DELIVERY DATA (SEE REVERSE SIDE)

DELIVERY INSTRUCTIONS

DELIVERY REQUIREMENTS
**GG**

AGENT'S INFORMATION

MAXIMUM TO BE DELIVERED   DELIVERY PERIOD EXPIRES
**02-11-06**

PDC CHECKS TO PREMIUM ADMINISTRATION

DEPOSIT WITH APPLICATION   **NO**
0.00

BENEFICIARY
**BENEFICIARY AS STATED IN APP**

MEMORANDA

POLICY PAGES:   BASE 100037, 11272, 102003, 103035, 104027, 105027, 109002, 1197929
TN
RIDERS   1092641

EXHIBIT
**D**

#6.



# General American
## LIFE INSURANCE COMPANY
### ST. LOUIS, MISSOURI 63166

POLICY NUMBER

3,704,224

INSURED

JAMES A. BREAZEALE

## LEVEL BENEFIT TERM LIFE INSURANCE
## ANNUALLY RENEWABLE TO AGE 95

### Non-Participating

Face amount payable at death of insured prior to expiration of initial or renewal term. Renewable to age 95 without evidence of insurability. Convertible prior to the Conversion Date shown on the Policy Specifications page. Re-Entry Privilege available with evidence of insurability. Premiums payable until the end of initial or renewal term, or until prior death of the insured. If the insured dies prior to the expiration of the initial or renewal term, we will pay the face amount to the beneficiary, subject to the provisions of this policy. We must receive proof of the insured's death. This policy must be surrendered to us after the death occurs. Any payment will be subject to all of the provisions and conditions on this and the following pages of this policy.

### RIGHT TO EXAMINE POLICY

You may return this policy within twenty days after receiving it. It may be delivered or mailed to us or the agent through whom it was purchased, or to any of our agents. The policy will then be deemed void from the start. Any premium paid will be refunded.

This policy is a legal contract between the policyowner and General American. PLEASE READ YOUR CONTRACT CAREFULLY. This cover sheet provides only a brief outline of some of the important features of your policy. This cover sheet is not the complete insurance contract and only the actual policy provisions will control. The policy itself sets forth, in detail, the rights and obligations of both you and your insurance company. IT IS, THEREFORE, IMPORTANT THAT YOU READ YOUR POLICY.

Signed for the company at its Home Office, St. Louis, Missouri 63128. (1-800-638-9294)

James D. Gaughan
Secretary

C. Robert Henrikson
President



**EXHIBIT**

E

100037
(1/2001)

3,704,224

# ALPHABETIC GUIDE TO YOUR CONTRACT

**Section**
6  Assignments
6  Beneficiary
6  Change of Owner or Beneficiary
7  Claims of Creditors
7  Conformity with Statutes
7  Contract
5  Conversion Privilege
1  Definitions
2  Grace Period
7  Incontestability
8  Interest on Proceeds

**Section**
7  Misstatement of Age or Sex
   and Corrections
6  Owner
8  Payment of Policy Benefits
2  Payment of Premiums
2  Premium Refund at Death
4  Re-Entry Privilege
2  Reinstatement
3  Renewal Privilege
7  Statements in Application
7  Suicide Exclusion

Additional Benefit Riders, Modification and Amendments, if any, and a Copy of the Application are found following the final section.

100037
(1/2001)

3,704,224

## POLICY SPECIFICATIONS

### INSURED INFORMATION

| | | | |
|---|---|---|---|
| Policy Number | 3,704,224 | Issue Age | 60 |
| Insured | James A. Breazeale | Sex | Male |
| Date of Issue | August 28, 2002 | Risk Classification | |
| | | | Special Premium Class |
| | | | Non-smoker |

### BENEFITS-AS SPECIFIED IN POLICY AND IN ANY RIDER AT ISSUE

| | FACE AMOUNT | ANNUAL PREMIUM | GUARANTEED LEVEL PREMIUM PERIOD* |
|---|---|---|---|
| POLICY PLAN<br>Level Benefit Term Life<br>Insurance Annually<br>Renewable to Age 95 | $3,500,000 | $37,665.00 | 10 Years |
| | | | |
| Amendment Rider | | | |
| | | | |
| Total Face Amount/Annual Premium | $3,500,000 | $37,665.00 | |
| Total Premium Payable at Annual Intervals<br>(Includes $75.00 policy fee.) | | $37,665.00 | |

The due dates of premiums after the first are measured from the Date of Issue and are at the intervals specified above.  Premiums reflect non-smoker discounts. These discounts are not guaranteed for any policy on the Insured arising from this policy.

Premiums after the first are shown in the Schedule of Renewal Premiums.

_(handwritten notes)_
4.5 K @ 24240 = 5.39/K /85.64
3.5 K @ 26052 = 7.44
3.5 K @ 37,665 10.76

761 - 7969

11272      1

POLICY SPECIFICATIONS                                                          3,704,

**IMPORTANT DATES**

Conversion Date                                                    August 28, 2(

Expiration Date of Initial Term                                    August 28, 2(

Expiration Date of Guaranteed Level Premium Period                 August 28, 2(

**GUARANTEED INTEREST RATE**

Guaranteed Interest Rate on Proceeds                                    4.0%

11272        2

SCHEDULE OF RENEWAL PREMIUMS

LEVEL BENEFIT TERM LIFE INSURANCE
ANNUALLY RENEWABLE TO AGE 95

POLICY
NUMBER
3,704,224

INSURING AGE 60

ANNUAL PREMIUMS FOR FACE AMOUNT ON POLICY SPECIFICATIONS PAGE

| RENEWAL AGES | RENEWABLE TERM PREMIUM | TOTAL ANNUAL PREMIUMS |
|---|---|---|
| 61 | $37,665.00 | $37,665.00 |
| 62 | 37,665.00 | 37,665.00 |
| 63 | 37,665.00 | 37,665.00 |
| 64 | 37,665.00 | 37,665.00 |
| 65 | 37,665.00 | 37,665.00 |
| 66 | 37,665.00 | 37,665.00 |
| 67 | 37,665.00 | 37,665.00 |
| 68 | 37,665.00 | 37,665.00 |
| 69 | 37,665.00 | 37,665.00 |
| 70 | 463,055.00 | 463,055.00 |
| 71 | 514,995.00 | 514,995.00 |
| 72 | 575,055.00 | 575,055.00 |
| 73 | 647,645.00 | 647,645.00 |
| 74 | 726,115.00 | 726,115.00 |
| 75 | 810,885.00 | 810,885.00 |
| 76 | 901,745.00 | 901,745.00 |
| 77 | 997,995.00 | 997,995.00 |
| 78 | 1,098,655.00 | 1,098,655.00 |
| 79 | 1,200,155.00 | 1,200,155.00 |
| 80 | 1,311,455.00 | 1,311,455.00 |
| 81 | 1,435,355.00 | 1,435,355.00 |
| 82 | 1,575,355.00 | 1,575,355.00 |
| 83 | 1,733,135.00 | 1,733,135.00 |
| 84 | 1,905,615.00 | 1,905,615.00 |
| 85 | 2,088,875.00 | 2,088,875.00 |

SCHEDULE OF RENEWAL PREMIUMS

LEVEL BENEFIT TERM LIFE INSURANCE
ANNUALLY RENEWABLE TO AGE 95

3,

INSURING AGE 60

ANNUAL PREMIUMS FOR FACE AMOUNT ON POLICY SPECIFICATIONS PAGE

| RENEWAL AGES | RENEWABLE TERM PREMIUM | TOTAL ANNUAL PREMIUMS |
|---|---|---|
| 86 | $2,279,275.00 | $2,279,275.00 |
| 87 | 2,475,135.00 | 2,475,135.00 |
| 88 | 2,672,535.00 | 2,672,535.00 |
| 89 | 2,874,135.00 | 2,874,135.00 |
| 90 | 3,082,735.00 | 3,082,735.00 |
| 91 | 3,301,835.00 | 3,301,835.00 |
| 92 | 3,538,575.00 | 3,538,575.00 |
| 93 | 3,802,895.00 | 3,802,895.00 |
| 94 | 4,139,175.00 | 4,139,175.00 |

102003

# 1. DEFINITIONS IN THIS POLICY

**We, Us and Our**  General American Life Insurance Company.

**You and Your**  The owner of this policy. The owner may be someone other than the insured.

In the application the words "You" and "Your" refer to the proposed insured person(s).

**Insured**  The person whose life is insured under this policy as shown on the Policy Specifications page.

**Issue Age**  The age of the insured as of his or her birthday nearest to the date of issue.

**Date of Issue**  The date of issue is the effective date of the coverage under this policy. The date of issue is shown on the Policy Specifications page. It is also the date from which policy anniversaries, policy years, and premium due dates are measured.

**Proceeds**  The amount payable as a result of the insured's death. This includes:

1.  the face amount of the policy, plus
2.  any amount payable under an attached rider, plus
3.  any premium refund, minus
4.  any premium due during the grace period.

# 2. PREMIUMS AND GRACE PERIOD

**Payment of Premiums**  Your first premium is due as of the date of issue. While the insured is living, premiums after the first must be paid in advance at our Home Office. You may pay your premiums annually, semiannually, or at other intervals we may establish from time to time. This right is subject to our rates and minimum premium requirement at the date of issue. When the premium for any rider is no longer payable, the total premium will be reduced accordingly. A premium receipt will be furnished upon request if you pay the Home Office.

If this policy is in your possession and you have not paid the first premium, it is not in force. It will be considered that you have the policy for inspection only.

**Grace Period**  Your premium is in default if you do not pay it on or before its due date. We will allow a grace period of 31 days after the premium due date for payment of each premium except the first. A notice will be sent to you, at your last known address, and any assignee of record. During this period no interest will be charged on the premium due, and the policy will remain in force. If the insured dies during the grace period, the amount of any unpaid premium due through the date of death will be deducted from the proceeds of the policy.

If any premium remains unpaid after the grace period, this policy will cease and become void.

103035 1
(1/2001)

3,704,224

**Reinstatement**

Within three years after a default in premium payment, but no later than the policy anniversary nearest the insured's 95th birthday, you may apply for reinstatement if:

1. You submit proof satisfactory to us that the insured is insurable by our standards; and

2. You pay all overdue premiums with interest at 6% per year compounded annually to the date of reinstatement; and

3. The insured is alive on the date we approve the request for reinstatement. If the insured is not alive, such approval is void and of no effect.

Any application for reinstatement becomes part of the contract of reinstatement and of this policy.

Subject to the above requirements, the effective date of reinstatement will be the date we approve the request for reinstatement. We will advise you of the reinstatement effective date.

**Premium Refund at Death**

Any part of a premium which pays the policy to a date beyond the insured's death will be refunded as part of the policy proceeds. This provision does not apply to any premium waived by a waiver of premium benefit rider.

103035 2
(1/2001)

3,704,224

### 3. RENEWAL PRIVILEGE

You may renew this policy without giving us proof that the insured is then insurable by our standards. However, you may not renew this policy beyond the policy anniversary nearest the 95th birthday of the insured. To renew the policy you must pay the proper premium shown on the premium billing notice. The premium must not be paid later than 31 days after the end of each preceding term. Each renewal will be for a term of one year and will begin when the preceding term ends.

If your policy has a waiver of premium rider, and if the insured becomes disabled as defined in such rider, this Renewal Privilege will be applied automatically according to the provisions of such rider.

### 4. RE-ENTRY PRIVILEGE

At any time after the expiration date of the guaranteed level premium period, you may apply for a new policy of this plan; subject to:

1. Proof of insurability acceptable to us; and
2. The insured's age not being greater than the maximum issue age for this policy at the time of re-entry.

The request for a new policy must be made to us in writing prior to the desired issue date of the new policy. The date of issue of the new policy will be the date of re-entry. The issue age will be the insured's age on the date of re-entry. We will determine the risk classification and approve the amount of insurance based on the evidence of insurability provided. The time periods in the Suicide Exclusions and Incontestability provisions will begin on the date of re-entry. The premiums for the new policy will be based on:

1. The premium rates in effect on the issue date of the new policy; and
2. The insured's age on the issue date of the new policy.

### 5. CONVERSION PRIVILEGE

While this policy is inforce, you may exchange this policy in its entirety for a new policy by making a written request prior to the Conversion Date shown on the Policy Specifications page.

The new policy will be a single life policy with cash value offered by us, or an affiliate designated by us, at the date of issue of your new policy. We guarantee that a policy will be made available.

It will be subject to the following provisions:

1. The amount converted will not be greater than the face amount of this policy.
2. The amount will be subject to the regular company limits on the date of issue of the new policy for the chosen plan of insurance. If the amount to be converted is less than our regular issue limits we may substitute an alternate plan. Regardless of amount, some plan will always be made available.

You do not need to give proof that the insured is then insurable by our standards if the new policy will be issued for the same or lower face amount as this policy and will not have any riders attached. If the face amount of the new policy increases or riders are to be attached to the new policy, then the exchange may be made only if the insured is then insurable. We will use the same underwriting standards as we are then using on applications for new insurance when considering whether the insured is insurable.

104027  1
(1/2001)

3,704,224

The date of issue of the new policy will be the nearest monthly anniversary of this policy on the date of exchange. You must pay all premiums in accordance with the terms of the new policy. The premium rate for the new policy will be based on the age and sex of the insured and our rates on the date of exchange, and the same risk classification, if available, or the nearest comparable risk classification for this policy.

The time periods in the Suicide Exclusion and Incontestability provisions of the new policy will start with this policy's date of issue. If there is an increase in face amount, the time periods in the Suicide Exclusion and Incontestability provisions will apply only to the increased amount and will be measured from the new policy's date of issue.

If this policy has a Waiver of Premium rider as a part of it and the insured becomes disabled as defined in that rider, the Term Conversion provision of the Waiver of Premium rider will modify the Conversion Privilege section of this policy.

104027  2
(1/2001)

3,704,224

## 6. PERSONS WITH AN INTEREST IN THE POLICY

**Owner**

The owner is as shown in the application or in any supplemental agreement attached to this policy, unless later changed as provided in this policy. You, as owner, are entitled to all rights provided by this policy, prior to its termination. Ownership may be changed in accordance with the Change of Owner or Beneficiary provision. Any person whose rights of ownership depend upon some future event will not possess any present rights of ownership. If there is more than one owner at a given time, all must exercise the rights of ownership by joint action.

**Beneficiary**

The beneficiary to receive the proceeds in the event of the insured's death is as shown in the application or in any supplemental agreement attached to this policy, unless later changed as provided in the policy. You may change the beneficiary in accordance with the Change of Owner or Beneficiary provision. Unless otherwise stated, the beneficiary has no rights in this policy before the death of the insured. If there is more than one beneficiary at the death of the insured, each will receive equal payments, unless otherwise provided. Unless you provide otherwise, if a beneficiary dies prior to the insured's death, that beneficiary's share will be paid to the living beneficiaries of that class. The deceased beneficiary's share will be paid in the same proportion as the living beneficiaries' shares. If there are no beneficiaries living when the insured dies, or at the end of any Common Disaster period, the proceeds (commuted if required) will be payable to you, if you are living, or to your estate.

**Change of Owner or Beneficiary**

During the lifetime of the insured you may change the ownership and beneficiary designations. You must make the change in a form satisfactory to us. If acceptable to us, the change will take effect as of the time you authorized the request, whether or not the insured is living when we receive your request at our Home Office. The change will be subject to any assignment of this policy or other legal restrictions. It will also be subject to any payment we made or action we took before we received your written notice of the change. We have the right to require the policy for endorsement before we accept the change.

If you are also the beneficiary of the policy at the time of the insured's death, you may designate some other person to receive the proceeds of the policy within 60 days after the insured's death.

**Assignments**

We will not be bound by an assignment of the policy or of any interest in it unless:

1.  The assignment is made by a written instrument,

2.  You file the original instrument or a certified copy with us at our Home Office, and

3.  We send you an acknowledgement.

We are not responsible for the validity of any transfer or assignment.

If a claim is based on an assignment, we may require proof of interest of the claimant. A valid assignment will take precedence over any claim of a revocable beneficiary.

106027 1
(1/2001)

3,704,224

# 7. THE CONTRACT

**The Contract**

We have issued this policy in consideration of the application and payment of premiums. The policy, the application for it, any riders or endorsements, copies of which are attached to and made a part of the policy, are the entire contract. A copy of any application for reinstatement will be sent to you for attachment to this policy and will become part of the contract of reinstatement and of this policy. In addition, any evidence of insurability required for changes to this policy will also be attached to and made a part of this policy. This policy may be changed by our mutual agreement. Any change must be in writing and approved by our President, Vice President, or Secretary. Our agents have no authority to alter or modify any terms, conditions, or agreements of this policy, or to waive any of its provisions.

**Conformity with Statutes**

If any provision in this policy is in conflict with the laws of the state which govern this policy, the provision will be deemed to be amended to conform with such laws. In addition, we reserve the right to change this policy if we determine that a change is necessary to cause this policy to comply with, or give you the benefit of, any federal or state statute, rule or regulation, including but not limited to requirements for life insurance contracts under the Internal Revenue Code, or its regulations or published rulings. You will be given the right to reject this change.

**Misstatement of Age or Sex and Corrections**

If the age or the sex of the insured has been misstated on the application, any amount payable on the policy will be such as the premium paid would have purchased, according to the rate at the date of issue, had the insured's age and sex been correctly stated. If we make any payment or policy changes in good faith, relying on our records, or evidence supplied to us, we will be fully discharged. We reserve the right to correct any errors in the policy.

**Statements in Application**

All statements made by the insured or on his or her behalf, or by the applicant, will be deemed representations and not warranties, except in the case of fraud. Material misstatements will not be used to void the policy or deny a claim unless made in the application, a copy of which is attached to and made a part of the policy when issued or delivered.

**Incontestability**

We cannot contest this policy, except for nonpayment of premium, after it has been in force during the lifetime of the insured for a period of two years from the date of issue. We cannot contest any reinstatement of this policy, with regard to material misstatements made concerning such reinstatement, except for nonpayment of premium, after it has been in force during the lifetime of the insured for a period of two years from the date we approve the reinstatement. This provision will not apply to any rider which contains its own incontestability clause.

**Suicide Exclusion**

If the insured dies by suicide, while sane or insane, within two years from the issue date (or within the maximum period permitted by law of the state in which this policy was delivered, if less than two years), the amount payable will be limited to the amount of premiums paid.

**Claims of Creditors**

To the extent permitted by law, neither the policy nor any payment under it will be subject to the claim of creditors or to any legal process.

106027 2
(1/2001)

3,704,224

## 8. PAYMENT OF POLICY BENEFITS

**Payment**

A lump sum payment will be made as provided on the face page. Settlement will be made within two months after receipt of due proof of death.

**Interest on Proceeds**

We will pay interest on proceeds from the date of the insured's death to the date of payment. Interest will be at an annual rate determined by us, but never less than the Guaranteed Interest Rate on Proceeds shown on the Policy Specifications page or the legal rate of the state which governs this policy, if higher.

**Extended Provisions**

Provisions for settlement of proceeds different from a lump sum payment may only be made upon written agreement with us.

007001  1
(1/2001)

3,704,224

# IMPORTANT INFORMATION TO POLICYHOLDERS

In the event you need to contact someone about this policy for any reason please contact your agent. If you have additional questions you may contact the insurance company issuing this policy at the following address and telephone number:

**General American Life Insurance Co.**
**Policyholder's Service Dept.**
**13045 Tesson Ferry Rd.**
**St. Louis, MO 63128**
**(314) 843-8700**

Written correspondence is preferable, so that a record of your inquiry is maintained. When contacting your agent or the company, be sure to tell them your policy number.



General American
LIFE INSURANCE COMPANY
ST. LOUIS, MISSOURI 63166

1092641
(1/89)

3,704,224

## AMENDMENT OF APPLICATION

Policy Number:   3,704,224          Insured:   JAMES A. BREAZEALE

The application for this policy is amended, as follows:

QUESTION #2 AND #3— BENEFICIARY AND OWNER: THE JAMES A. BREAZEALE
                                           2002 INSURANCE TRUST,
                                           LISA B. ROBERTS, TRUSTEE.

QUESTION #5— BASE FACE AMOUNT: $3,500,000.

This amendment and the application will be part of this policy.

Dated at ___Memphis, TN___

X _____
(*Signature of Proposed Insured · Parent
or Guardian of Minor Proposed Insured)

This __13th__ day of __November__ year __2002__

X __Lisa B. Roberts, Trustee__
(*Signature of Applicant/Owner)

_____
Signature of Additional Adult Insured

*Signature and address if other than Proposed
Insured. If Owner is a Corporation, Partnership,
or Trust, an authorized officer, partner, or
trustee must sign and state title.

EXHIBIT
F


General
American
LIFE INSURANCE COMPANY
ST. LOUIS, MISSOURI 63166

9385
(6/91)

3,704,224

Burr D. Hughes, III
6060 Poplar Avenue, Suite 200
Memphis, TN 38119

December 19, 2002

Mr. Jim Riva
METLIFE FINANCIAL SERVICES
51 Germantown Court, Suite 103
Cordova, TN 38018

VIA FACSIMILE 758-8420

Dear Jim:

Pursuant to our conversation, enclosed is the illustration that I sold to Jim Breazeale and the premium collection sheet. I sold Jim a Table D rating not a policy with a flat extra. This illustration was provided to me per your conversation with the underwriter. Also enclosed is the delivery sheet showing that the policy was issued at a flat extra rather than a Table D. The policy was issued in error and I did not catch it until I received my commission check yesterday.

As you know, commissions are not paid on flat extras but they are paid on Table ratings. This is General American's mistake. They need to correct it. The client thinks he has bought a Table D. I think General American ought to type up a new face page and an apology and send it to me so that I can deliver it to the policy owner.

I am leaving tomorrow at 6 a.m. for the Christmas holiday, and I would like to get this resolved today.

Sincerely,

Burr

6 pages



EXHIBIT
G

American · Johnstown, PA 19907-9250

NOTICE OF PAYMENT DUE - *Please Return*

| | PREMIUM |
|---|---|
| | 26,052.00 |

Policy Number
3702002

Premium Due
ANNUAL

Due Date
08-28-2004

AMOUNT DUE ▶ | 26,052.00 |

IMPORTANT: Please write your policy number on your check and
enclose this portion of the statement. Make check payable to:
General American Life Insurance Company

INSURED: JAMES A BREAZEALE

PAYOR: VALLEY PRODUCTS CO
384 E BROOKS RD
MEMPHIS TN 38109

GENERAL AMERICAN
P.O. BOX 790196
ST. LOUIS, MO 63179-0196

003702002082804000026052000000000000000000000026050500122



AMSOUTH

OFFICIAL CHECK

036833232

10-89/202

09/21/2004

$26,052.00

LISA B ROBERTS, TRUSTEE
Purchaser

TWENTY SIX THOUSAND FIFTY TWO DOLLARS AND 00 CENTS

Pay to the order of: GENERAL AMERICAN LIFE INSURANCE COMPANY
FOR JAMES BREAZEALE 2002 INSURANCE TRUST

Purchased For

AmSouth Bank

Authorized Signature

Issued by Integrated Payment Systems Inc., Englewood, Colorado
To Citibank, N.A., Buffalo, NY

"440 2 25"  "0 2 0008 68"  68003683232 2325"



EXHIBIT

H

OCT-15-2007 MON 02:41 PM VALLEY   DUCTS CO.          FAX NO. 9013400          P. 07

**General American**
LIFE INSURANCE company
P.O. Box 12262
Johnstown, PA 15907-2262

NOTICE OF PAYMENT DUE - *Please Return*

Policy Number
3702002

PREMIUM

26,052.00

Premium Due
ANNUAL

Due Date
08-28-2005          AMOUNT DUE ▶          26,052.00

IMPORTANT: Please write your policy number on your check and enclose this portion of the statement. Make check payable to: General American Life Insurance Company

INSURED:   JAMES A BREAZEALE

PAYOR:     VALLEY PRODUCTS CO
           384 E BROOKS RD
           MEMPHIS TN 38109-2931

GENERAL AMERICAN
P.O. BOX 790156
ST. LOUIS, MO 63179-0196

0037020020826050002605200000000000000000000000000002605200121

**General American**
LIFE INSURANCE company
P.O. Box 30440, Tampa, FL 33630-3440
Phone: 1-800-638-8234 FAX: 1-813-801-2500
Policy Service Info Line: 1-800-638-8234

POLICYHOLDER COPY

| Insured | Issue Date | Policy Number | PREMIUM | 26,052.00 |
|---------|-----------|---------------|---------|-----------|
| JAMES A BREAZEALE | 08-28-2002 | 3702002 | | |
| Name of Plan | Amount of Insurance Next Anniversary | Premium Due | | |
| GLF-10 | 901 | 3,500,000 | ANNUAL | |

5.300% ~ New Loan Interest Rate

Due Date
08-28-2005          AMOUNT DUE ▶          26,052.00

Your policy allows us to establish a
new loan interest rate once each
year, subject to a legal maximum.
This rate will become effective on
the policy anniversary.

SEE CONDITIONS ON OTHER SIDE.

Your canceled check or money order stub
is your receipt.

Financial Services Representative 816-776-3233

**General American**
LIFE INSURANCE company
P.O. Box 30440, Tampa, FL 33630-3440
Phone: 1-800-638-8234 FAX: 1-813-801-2500
Policy Service Info Line: 1-800-638-8234

This Section Intentionally Left Blank

*Valley check to:*

*James A. Breazeale Insurance Trust*

OCT-15-2007 MON 02:41 PM VALLEY P. UCTS CO.          FAX NO. 901348666          P. 08

**AMSOUTH**                OFFICIAL CHECK                    327403367

09/21/2005

James A. Breazeale Insurance Trust
Purchaser                                              $26,052.00        Fee        $0.00

TWENTY SIX THOUSAND FIFTY TWO DOLLARS AND 00 CENTS
                                                      AmSouth Bank
Pay to the order of:   General American                NOT NEGOTIABLE
                                                       CUSTOMER COPY
#3702002/ Plan GLT-10                                 Authorized Signature
Purchased For

**AMSOUTH**          OFFICIAL CHECK                          327403367

09/21/2005

James A. Breazeale Insurance Trust
Purchaser                                              $26,052.00

TWENTY SIX THOUSAND FIFTY TWO DOLLARS AND 00 CENTS
Pay to the order of:   General American               AmSouth Bank

#3702002/ Plan GLT-10
Purchased For                                         Authorized Signature

OCT-15-2007 MON 02:41 PM VALLEY ...DUCTS CO.          FAX NO. 9013...          P. 04

**GenAmerica Financial**
A MetLife Company

General American Life Insurance Company
P.O. Box 6250
Johnstown, PA 15907-6250

Questions? Contact your representative:

Financial Services Representative 615-776-3233
Contact the Customer Response Center:
1-800-638-9294

## Notice of Payment Due

| | |
|---|---|
| Life Policy Number | 3702082 |
| Premium Mode | ANNUAL |
| Due Date | 08-28-2006 |

VALLEY PRODUCTS CO
384 E BROOKS RD
MEMPHIS TN 38109-2931

| | | |
|---|---|---|
| PREMIUM | $ | 26,052.00 |
| AMOUNT DUE | $ | 26,052.00 |

Plan            GLT-10    901
Insured         JAMES A BREAZEALE
Issue Date      08 28 2002
Amount of Insurance Next Anniversary     $ 3,500,000

This premium shown is payable on or before the due date shown (or within the ..... grace period) to the Company or its authorized representative.

6.300% - New Loan Interest Rate
Your policy allows us to establish a new loan interest rate once each year, subject to a legal maximum. This rate will become effective on the policy anniversary.

This Section Intentionally Left Blank

AUG 15 2006

VENDOR V _____
EXT OK _____
GL# _____
GL# _____
GL# _____
PROJECT _____
OK TO P... _____
PAY ... _____

Please refer to other side for important information.
Detach here and return the bottom portion with your payment.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

**GenAmerica Financial**
A MetLife Company

## Notice of Payment Due

| | |
|---|---|
| Policy Number | 3702082 |
| Insured | JAMES A BREAZEALE |
| Date Due | 08-28-2006 |
| PREMIUM | $ 26,052.00 |

General American Life Insurance Company
P.O. Box 790196
St. Louis, MO 63179-0196

| | |
|---|---|
| AMOUNT DUE | $ 26,052.00 |

Please make check payable to: General American Life Insurance Company
IMPORTANT! All billing address changes must be indicated on the reverse side.

*P.J. 9/15/06 z AmSouth cashier's ...*

0037020020828006002620520000000000000000000000000002620520020120

General American Life Insurance Company
P.O. Box 355
Warwick, RI 02887-0355



**General American**
LIFE INSURANCE COMPANY
A MetLife Affiliate

J INS TRST BREAZEALE
384 E BROOKS RD
MEMPHIS TN 38109-2931

**ANNUAL STATEMENT**
This is not a bill.

August 7, 2006
**IMPORTANT NOTICE**

**BE INFORMED ABOUT YOUR POLICY —
ASK FOR AN IN-FORCE ILLUSTRATION**

General American is pleased to offer a valuable new feature to our policyholders. It's called an "in-force illustration," a detailed report showing the future projection of your policy's values. The illustration shows year-by-year changes in your policy's values based on certain assumptions of how much premium you pay, what the annual dividends will be, and so forth. You should not consider replacing your policy or making changes to your coverage without this information.

You can request an in-force illustration once a year without charge. Just contact your agent or call our home office at 1-800-638-9294, or write to us at P.O. Box 14490, St. Louis, MO 63178. We will promptly respond to your request as part of our commitment to give you the best possible service. If for some reason, however, you don't receive the illustration within 30 days of your request, you should contact your state insurance department.

## POLICY BENEFITS AND CASH VALUES

All values, amounts and coverages are as of your August 28, 2006 policy anniversary
unless otherwise stated, assuming premiums are paid to that date.

| | | | |
|---|---|---|---|
| Insured: | James A Breazeale | Policy Number: | 3702002 |
| Plan of Insurance: | Level Benefit Term Ren To Age 95 | | |
| Annual Premium: | | | $26,052.00 |

| | **DEATH BENEFIT** | **CASH VALUE** |
|---|---|---|
| Level Benefit Term Ren To Age 95 | $3,500,000.00 | $0.00 |
| **TOTAL VALUES:** | $3,500,000.00 | $0.00 |

Page 1, Policy: 3702002

**AmSouth**                    OFFICIAL CHECK

549285617

JAMES A BREAZEALE INS. TRUST
Purchaser

09/15/2006

$26,052.00
Fee          $0.00

TWENTY SIX THOUSAND FIFTY TWO DOLLARS AND 00 CENTS

Pay to the order of:   GENERAL AMERICAN LIFE INSURANCE CO.

**AmSouth Bank**
NOT NEGOTIABLE
CUSTOMER COPY

POLICY# 3702002
Purchased For

Authorized Signature    Branch TN0508

---

011102283006 Rev.3 1-04 M 67804-4(567)11

HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK   OFFICIAL CHECK   HOLD DOCUMENT UP TO THE LIGHT TO VIEW TRUE WATERMARK

**AmSouth**                          16-60/220   549285617

JAMES A BREAZEALE INS. TRUST
Purchaser

09/15/2006

$26,052.00

TWENTY SIX THOUSAND FIFTY TWO DOLLARS AND 00 CENTS

Pay to the order of:   GENERAL AMERICAN LIFE INSURANCE CO.

**AmSouth Bank**

POLICY# 3702002
Purchased For

Authorized Signature   Branch TN0508

Issued by Integrated Payment Systems Inc., Englewood, Colorado
To Citibank, N.A., Buffalo, NY

⑈440226⑈ ⑆022000868⑆ 6800549285617⑈

OCT-15-2007 MON 02:41 PM VALLEY PRODUCTS CO.                FAX NO. 9013488***                P. 03

General American Life Insurance Company
P.O. BOX 990088
HARTFORD,CT 06199-0089    00230

**GenAmerica Financial®**
A MetLife Company

J INS TRST BREAZEALE
384 E BROOKS RD
MEMPHIS TN 38109-2931

GS1 ANNUAL STATEMENT
This is not a bill.
August 7, 2007

## BE INFORMED ABOUT YOUR POLICY - ASK FOR AN IN-FORCE ILLUSTRATION

As a General American Life Insurance Company policyholder, you have access to a valuable tool called a current "in-force illustration" - whereby you can easily review possible future values of your policy. The nonguaranteed future values shown in an in-force illustration are based on certain assumptions (including premiums paid based on planned premium, current and guaranteed interest crediting rates, the cost of insurance, and other variables). As explained in the IMPORTANT NOTICE below, this in-force illustration is free of charge and provides important information when considering replacing or making changes to your existing policy.

IMPORTANT NOTICE: You should consider requesting more detailed information about your policy to understand how it may perform in the future. You should not consider replacement of your policy or make changes in your coverage without requesting a current illustration. You may annually request, without charge, such an illustration by contacting your representative, writing to General American Life Insurance Company at In-force Illustration Unit, P.O. Box 14490, St. Louis, MO 63178, or calling our Customer Service Center at 1-800-638-9294 Monday through Friday between 9 a.m. and 6 p.m., ET. If you do not receive a current illustration of your policy within 30 days of your request, you should contact your state insurance department.

### POLICY BENEFITS AND CASH VALUES

All values, amounts and coverages are as of your August 28, 2007 policy anniversary
unless otherwise stated, assuming premiums are paid to that date.

| | | Policy Number: | 3702002 |
|---|---|---|---|
| Insured: | James A Breazeale | | |
| Plan of Insurance: | Level Benefit Term Ren To Age 95 | | |
| Annual Premium: | | | $26,052.00 |

| | **DEATH BENEFIT** | **CASH VALUE** |
|---|---|---|
| Level Benefit Term Ren To Age 95 | $3,500,000.00 | $0.00 |
| TOTAL VALUES: | $3,500,000.00 | $0.00 |

### TITLE INFORMATION

Policy Owner:            J Ins Trst Breazeale
Primary Beneficiary:     J Ins Trst Breazeale

Page 1. Policy: 3702002

OCT-15-2007 MON 02:41 PM VALLEY PRODUCTS CO

General American Life Insurance Company
P.O. Box 6250
Johnstown, PA 15907-6250

**GenAmerica Financial**
A MetLife Company

Questions? Contact your representative:
Financial Services Representative 615-778-3233

Contact the Customer Response Center:
1-800-638-8294

## Notice of Payment Due

| | |
|---|---|
| Policy Number | 3702002 |
| Premium Mode | ANNUAL |
| Due Date | 08-28-2007 |

VALLEY PRODUCTS CO
384 E BROOKS RD
MEMPHIS TN 38109-2531

| | | |
|---|---|---|
| PREMIUM | $ | 26,052.00 |

| Plan | GLT-10   901 |
|---|---|
| Insured | JAMES A BREAZEALE |
| Issue Date | 08-28-2002 |
| Amount of Insurance Next Anniversary | $ 3,500,000 |

| | | |
|---|---|---|
| AMOUNT DUE | $ | 26,052.00 |

The premium shown is payable on or before the due date shown (or within the 31-day grace period) to the Company or its authorized representative.

5.960% - New Loan Interest Rate
Your policy allows us to establish a new loan interest rate once each year, subject to a legal maximum. This rate will become effective the policy anniversary.

This Section Intentionally Left Blank

*Lisa B. Roberts, Trustee*
*James A. Breazeale Insurance Trust*

**AmSouth**                    OFFICIAL CHECK                    252674461

James A. Breazeale Insurance Trust
Purchaser

TWENTY SIX THOUSAND FIFTY TWO DOLLARS AND 00 CENTS

Pay to the order of:   General American Life Insurance Company

Policy # 3702002
Purchased For

09/25/2007

$26,052.00

Fee          $0.00

**AmSouth Bank**
AmSouth Bank is now Regions Bank
**NOT NEGOTIABLE**
**CUSTOMER COPY**

Authorized Signature   Branch TN0908



*LACY KENNEDY*
*761 - 7969 FAX*
*761 - 7794 Phone*

Friday, September 28, 2007

Valley Products CO
384 E Brooks Rd
Memphis, TN 38109-2931

Policy number: 3702002
Insured: James Breazeale

Dear James,

Thank you for your recent payment of $26052.00. However a recent policy change that was completed has increased the premium on your policy to $37665.00. Please send in the additional amount of $11613.00 to complete your payment. We will hold the payment until October 26, 2007. If no response is received we will refund your payment.

If you have any further questions or concerns, contact our Customer Service Center and they will assist you.

Thank You

*10/9/07*

Yaime Alfonso
1-800-223-9989   *877 - 638 - 0411*
Remittance Processing Center *X 4295*



*" Increased to greater."*
*Holly - when issued was issued incorrectly*
*813 - 983 - 4411*
*LAcy - Error made by New Business when*
*issuing policy.*
*11/6  Lacy - Chris Brown handling for Gen. Am.*
*No word from him*

27-01 Queens Plaza North
Long Island City, NY 11101-4018

**MetLife**®

Ms. Lisa B. Roberts
24 Goodway Lane
Memphis, Tn. 38117

Re General American Policy No 3702002 (formerly 3704224)

Dear Ms. Roberts

This is in response to your letter, dated March 3, 2008.

Some of the confusion in this case stems from the fact that several versions of the policy were issued with the Policy Number 3702002. This number was given to the first policy issued, and it is the policy number in effect today. The attached premium history shows that all premium payments have been applied to this policy (Exhibit #1).

The premium rating for this policy was determined on August 27, 2002. The attached Final Action Routing and Instruction Sheet (Exhibit #2) confirms that the underwriting decision was Table D Non-Smoker. Although policies with different amounts of insurance and different premium amounts were subsequently issued, the rating did not change. Your understanding that the rating was improved in October 2002 is incorrect. Indeed, our underwriting file contains no record of any discussion of the rating after August 27, 2002.

On September 26 or 28, 2002 an illustration was prepared. The illustration (Exhibit # 3) showed that the annual premium for a $3,500,000 with the Standard Non-Tobacco, Table D rating was $37,890. The trust obtained a check for $37,890.00 the same day — indicating that the amount of the premium for the reduced policy had been effectively communicated.

When the policy was returned for reissue for the reduced amount of $3,500,000, a clerical error was made in indicating the premium.

Mr. Anderson of the Tennessee Insurance Department sent me a copy of a letter, dated December 20, 2007, from Lacy Kennedy to Mr. Breazeale. General American does not dispute that a clerical error was made in indicating the premium on the policy and accepted the incorrect premium since 2002. General American does claim that it is entitled to payment of the correct premium for the remainder of the initial term period and each year thereafter. The correct premium was known to the trust on September 28, 2002. In fairness to our other customers, General American cannot offer preferential



EXHIBIT
J

premium rates to the trust because of a clerical error that should have been obvious to both the trust and Mr. Hughes.

I trust this explains our position in this matter.

Sincerely,

Marcia C. McDermott
Consultant
Consulting Services

April 15, 2008

cc James Breazeale
   Daniel Anderson

# Payment History Report

**Policy Number:** 3702002
**Insured's Name:** JAMES A BREAZEALE

| Transaction Date | Amount | Transaction Type | Paid For Date |
|---|---|---|---|
| September 21, 2006 | $26,052.00 | Gross Premiums Life Renewal | August 28, 2006 |
| October 28, 2005 | $26,052.00 | Gross Premiums Life Renewal | August 28, 2005 |
| January 26, 2005 | $26,052.00 | Gross Premiums Life Renewal | August 28, 2004 |
| September 8, 2003 | $26,052.00 | Gross Premiums Life Renewal | August 28, 2003 |
| October 21, 2002 | $26,052.00 | Gross Premiums Life First Year | August 28, 2002 |

Exhibit H

Issued 8/28/02 R.M.

$ 48,405.00

ADMINISTRATIVE OFFICE

JUL 09 2002

## FINAL ACTION ROUTING & INSTRUCTION SHEET

JUL 1 0 2002
KEISHA RALPH
SERVICE

INSURED: BREAZEALE JAMES

UNDERWRITER: ROB MAZEN          CASE #: 202 247 852

COMPANY: GENERAL AMERICAN          POLICY #: 3702002

APPROVAL DATE: ROB MAZEN  AUG 27 2002          ISSUE DATE: _____

AGENT #1 PRODUCER ID: 2380-00900 00813 942 001

AGENT #2 PRODUCER ID: _____

```
==============================================================
```

CLASSIFICATION: TABLE D          ☐ SMOKER     ☒ NON SMOKER

SRC:     $_____  PER THOUSAND     X_____ YEARS

ISSUE STATE:_____  PLAN:_____  FACE AMT:_____

```
==============================================================
```

AMENDMENT:_____

_____

_____

_____

_____

_____

```
==============================================================
```

SPECIAL
INSTRUCTIONS:_____

_____

_____

_____

REINSURANCE:     ☐ YES     ☐ NO     CODE:_____

FOR GENAM:     TYPE_____

SUITABILITY REVIEW: ☐ O.K.     SIGNATURE:_____

     DATE:_____

## MIB CODED:_____

891982117833

Exhibit #2



# GenAmerica
## FINANCIAL
*A MetLife Company*

### Face Amount   $3,500,000

valued client
Age 60, Male, Standard Non-Tobacco
Table Rating = D
Tennessee
Agent: Administrator

| Age at Beginning of Year | GLY-40(02) Base | GLT-10(02) Total | GLY-20(02) Base | GLY-20(02) Total |
|---|---|---|---|---|
| 60 | 37,890 | 37,890 | 71,880 | 71,880 |
| 61 | 37,890 | 37,890 | 71,880 | 71,880 |
| 62 | 37,890 | 37,890 | 71,880 | 71,880 |
| 63 | 37,890 | 37,890 | 71,880 | 71,880 |
| 64 | 37,890 | 37,890 | 71,880 | 71,880 |
| | | | | |
| 65 | 37,890 | 37,890 | 71,880 | 71,880 |
| 66 | 37,890 | 37,890 | 71,880 | 71,880 |
| 67 | 37,890 | 37,890 | 71,880 | 71,880 |
| 68 | 37,890 | 37,890 | 71,880 | 71,880 |
| 69 | 37,890 | 37,890 | 71,880 | 71,880 |
| | | | | |
| 70 | 463,070 | 463,070 | 71,880 | 71,880 |
| 71 | 518,010 | 518,010 | 71,880 | 71,880 |
| 72 | 575,070 | 575,070 | 71,880 | 71,880 |
| 73 | 647,080 | 647,080 | 71,880 | 71,880 |
| 74 | 726,130 | 726,130 | 71,880 | 71,880 |
| | | | | |
| 75 | 810,900 | 810,900 | 71,880 | 71,880 |
| 76 | 901,780 | 901,780 | 71,880 | 71,880 |
| 77 | 998,010 | 998,010 | 71,880 | 71,880 |
| 78 | 1,098,570 | 1,098,570 | 71,880 | 71,880 |
| 79 | 1,209,170 | 1,209,170 | 71,880 | 71,880 |
| | | | | |
| 80 | 1,311,470 | 1,311,470 | 1,311,470 | 1,311,470 |
| 81 | 1,435,370 | 1,435,370 | 1,435,370 | 1,435,370 |
| 82 | 1,575,370 | 1,575,370 | 1,575,370 | 1,575,370 |
| 83 | 1,733,150 | 1,733,150 | 1,733,150 | 1,733,150 |
| 84 | 1,905,630 | 1,905,630 | 1,905,630 | 1,905,630 |
| | | | | |
| 85 | 2,088,890 | 2,088,890 | 2,088,890 | 2,088,890 |
| 86 | 2,279,250 | 2,279,250 | 2,279,250 | 2,279,250 |
| 87 | 2,476,150 | 2,476,150 | 2,476,150 | 2,476,150 |
| 88 | 2,672,650 | 2,672,650 | 2,672,650 | 2,672,650 |
| 89 | 2,874,150 | 2,874,150 | 2,874,150 | 2,874,150 |

GFG Version 2.88 (02)                    Page 2 of 3                    September 26, 2002

Exhibit 3

# LISA B. ROBERTS

October 1, 2008

MetLife
Attn: Marcia C. McDermott
27-01 Queens Plaza North
Long Island, NY 11101-4018

RE: General American/MetLife Policy #3702002

Dear Ms. McDermott,

Over the past month we and our agent, Burr Hughes, have been requesting the annual premium statement from MetLife on this policy. Your Customer Service Department will only say that the policy is frozen while the year long investigation is underway, and that we should not remit a premium while it is in this frozen state. At one point they said that they would send a premium statement reflecting the higher premium that MetLife is now demanding to maintain the full $3.5M coverage in force. We responded that we had elected to continue coverage at the same premium of $26,052 instead of increasing the premium as MetLife is asking to maintain the $3.5M coverage. I am enclosing your letter of 5/16/08 to Mr. Daniel Anderson, in which you offered this option, and my letter of 6/10/08 in which I elected to keep the premium at $26,052.

It is very important to us to maintain this life insurance coverage, and we are not comfortable continuing to wait on paying the premium until the policy is "unfrozen" at some future date. We don't want the policy to somehow be found in default for lack of premium payment.

Since your own voice mailbox has been full for some time and Mr. Hughes' office has been unable to get a response to their contacts to you on our behalf, we think it is best that we send the enclosed $26,052 cashier's check to you for proper handling in order to keep Policy #3702002 in good standing. Please let me know if there is anything further required of us at this time.

Sincerely,

Lisa B. Roberts
Trustee, James A. Breazeale 2002 Insurance Trust



24 GOODWAY LANE • MEMPHIS, TN • 38117
PHONE: 901-682-1732
EMAIL: LISAMEMPHIS@BELLSOUTH.NET

**GenAmerica Financial®**
A MetLife Company

General American Life Insurance Company
P.O. Box 6250
Johnstown, PA 15907-6250

Questions? Contact your representative:
Financial Services Representative 615-778-3233

Contact the Customer Response Center:
1-800-638-9294

## Notice of Payment Due

| Policy Number | 3702002 |
|---|---|
| Premium Mode | ANNUAL |
| Due Date | 08-28-2007 |

VALLEY PRODUCTS CO
384 E BROOKS RD
MEMPHIS TN 38109-2931

| PREMIUM | $ | 26,052.00 |
|---|---|---|

| Plan | GLT-10   901 |
|---|---|
| Insured | JAMES A BREAZEALE |
| Issue Date | 08-28-2002 |
| Amount of Insurance Next Anniversary | $ 3,500,000 |

| AMOUNT DUE | $ | 26,052.00 |
|---|---|---|

The premium shown is payable on or before the due date shown (or within the 31 day grace period) to the Company or its authorized representative.

**5.900% – New Loan Interest Rate**
Your policy allows us to establish a new loan interest rate once each year, subject to a legal maximum. This rate will become effective on the policy anniversary.

This Section Intentionally Left Blank

*Lisa B. Roberts Trustee*
*James A. Breazeale Insurance Trust*

Please refer to other side for important information.
Detach here and return the bottom portion with your payment.

*9/25/08*

*No Notice of Payment Due*
*has been received for 2008.*
*Please apply this $26,052⁰⁰*
*premium to continue policy*
*#3702002 in effect.*

**MetLife®**

P O  BOX 30074
TAMPA  FL 33630-3074



J INS TRST   BREAZEALE
384 E BROOKS RD
MEMPHIS TN 38109-


POLICY 03702002 - INSUFFICIENT PREMIUM

---



EXHIBIT
L

---

Detach stub before cashing





**MetLife®**
P O BOX 30074
TAMPA  FL 33630-3074

Metropolitan Life Insurance Company
Type of Payment   REFUND-NRR

300
OFFICE           AGENCY

50-937/213           619

Check Number
201621208

0102002002

Pay to the Order of:

20440000

J INS TRST   BREAZEALE
384 E BROOKS RD
MEMPHIS TN 38109-

Not Valid Before
03/26/2009

Amount
Dollars   Cents
$**14439*00

JPMorgan Chase Bank, N.A.
6040 Tarbell Road
Syracuse NY 13206

E. T. Stagwall
AUTHORIZED SIGNATURE



General American Life Insurance Company
P.O. Box 990089
Hartford, CT 06199-0089    00015

**GenAmerica Financial®**
A MetLife Company

March 31, 2009

J INS TRST BREAZEALE
384 E BROOKS RD
MEMPHIS TN 38109-2931

Re: General American Life Insurance Company Policy 3702002
    Insured JAMES A BREAZEALE

Dear J INS TRST BREAZEALE:

Your policy lapsed because the premium due on August 28, 2008 has not been paid.

Your term policy does not contain a non-forfeiture provision. Therefore, the policy expired at the end of its grace period and is now without value.

To apply for reinstatement of your policy, please complete the Application for Reinstatement form and submit a payment of $37,665.00. This amount includes past due premiums as well as the current premium, and will pay your policy through August 28, 2009.

When completing the Application for Reinstatement form, please be sure to complete all required areas in full. If there have been no health changes in the time frame noted, please state "None" when answering questions 1 and 2. Please return the form and payment in the enclosed envelope.

If you have any questions, please contact your representative, Financial Services Representative at (615) 778-3233 or call the Customer Service Center at 1-800-638-9294 Monday through Friday between 9 a.m. and 6 p.m., ET.

Sincerely,

*Valerie Boccanfuso*

Valerie Boccanfuso
Disbursements and Correspondence Unit

cc: 02380-04241-0313942

enclosure

EXHIBIT
exhibitsticker
M



7005 3480 0009 2914 0043

BURCH, PORTER & JOHNSON, PLLC
ATTORNEYS AT LAW
130 NORTH COURT AVE.
MEMPHIS, TENN 38103

GENERAL AMERICAN LIFE INSURANCE
COMPANY
C/O CT CORPORATION
800 S. GAY STREET
KNOXVILLE, TENNESSEE 37929